# Exhibit A

SUMMONS - CIRCUIT COURT

3101 (Rev. 12/20)

| STATE OF ILLINOIS | UNITED STATES OF AMERICA<br>IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT | COUNTY OF DU PAGE |

**CASESTACK, LLC**

PLAINTIFF

vs

**THE KOREX CORPORATION**

DEFENDANT

### 2023LA000001

**CASE NUMBER**

**DATE OF SERVICE**

TO BE INSERTED BY OFFICER ON COPY LEFT WITH
DEFENDANT OR OTHER PERSON

## SUMMONS
### CIRCUIT COURT

File Stamp Here

☒ ORIGINAL  ☐ ALIAS

To each Defendant: **The Korex Corporation c/o Jason Anderson 50000 Pontiac Trail Wixom, MI 48393**

You are Summoned and Required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance in the office of the Clerk of the Circuit Court, 505 N. County Farm Road, Wheaton, Illinois, within 30 days after service of this summons not counting the day of service.

   If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

To the Officer

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service and not less than three (3) days before the date of remote appearance. If service cannot be made, this summons shall be returned so endorsed.

   This summons may not be served later than thirty (30) days after its date.

**WITNESS:**

Name: **James J. Roche & Associates**  ☐ Pro Se

DuPage Attorney Number: **21248**

Attorney for: **CaseStack, LLC**

Address: **920 N York Rd Suite 210**

City/State/Zip: **Hinsdale, IL 60621**

Telephone Number: **630-358-6868**

Email: **lcrow@jjroche.net**

**CANDICE ADAMS,** Clerk of the Eighteenth Judicial Circuit Court, and the seal thereof, Wheaton, Illinois  1/3/2023 11:17 AM

Date
*Candice Adams* eK

Deputy Clerk

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp or talk to your circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your local clerk for more information or visit www.illinoislegalaid.org.**

**NOTE:**

The filing of an appearance or answer with the Circuit Court Clerk requires a statutory filing fee, payable at the time of filing. If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a free waiver application.

If you need legal advice concerning your legal responsibility as a result of this summons being serviced upon you and you don't have a lawyer, you can call the DuPage Bar Association, Lawyer Referral Service at 630-653-9109.

**CANDICE ADAMS, CLERK OF THE 18th JUDICIAL CIRCUIT COURT ©**
**WHEATON, ILLINOIS 60187-0707**

## IN THE CIRCUIT COURT OF EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS--LAW DIVISION

CASESTACK, LLC,

              Plaintiff,

    v.

THE KOREX CORPORATION,

              Defendant.

No.

## 2023LA000001

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 20864247
2023LA000001
FILEDATE: 1/3/2023 8:37 AM
Date Submitted: 1/3/2023 8:37 AM
Date Accepted: 1/3/2023 10:20 AM
LG

## COMPLAINT

NOW COMES Plaintiff, CASESTACK, LLC. ("CaseStack"), by and through its

attorneys, JAMES J. ROCHE & ASSOCIATES, and complains against Defendant, THE

KOREX CORPORATION (hereinafter referred to as "Korex") as follows:

### JURISDICTION, VENUE AND THE PARTIES

1.     Korex is a Michigan corporation doing business in Illinois. Korex manufactures

consumer products, including, but not limited to dishwasher detergents.

2.     CaseStack is a Delaware corporation doing business in Illinois. CaseStack

arranges freight transportation for companies in the consumer-packaged goods industry.

3.     This court has jurisdiction over Defendants under 735 ILCS 5/2-209

4.     Venue is proper in DuPage County, Illinois pursuant to 735 ILCS 5/2-102(a)

because the parties provide services and do business in DuPage County, Illinois.

5.     All conditions precedent to the filing of this lawsuit have occurred, are deemed

waived, excused, or are otherwise satisfied.

### BACKGROUND ALLEGATIONS

6.     From May of 2022 through October of 2022, CaseStack provided certain freight

logistics services to Korex, which are governed by a Master Service Agreement and Terms of

Service for transportation and logistics management services ("the Agreement"). The terms and conditions of the Agreement were accepted by Korex. A true and correct copy of the Agreement is attached hereto and incorporated by reference as **Exhibit A.**

7.     CaseStack fully performed the services it was obligated to provide to Korex in accordance with the terms of the Agreement.

8.     Korex accepted the services and received the benefit of the same.

9.     Korex has failed to perform under the Agreement as it failed to pay for some of the services provided by CaseStack. A true and correct copy of a ledger of all unpaid invoices as well as a true and correct copy of the invoice for the service provided is attached hereto and incorporated by reference as **Exhibit B.**

**COUNT I – BREACH OF CONTRACT**

10.     CaseStack incorporates and re-alleges paragraphs 1-9 of this Complaint as if fully set forth herein.

11.     Korex breached the Agreement by, among other things, failing to pay CaseStack for the services it provided and the costs it advanced pursuant to the Agreement. *See* **Exhibit A**.

12.     As a result of Korex's breach of the Agreement, CaseStack has suffered damages in excess of $773, 078.64, the exact amount to be proven at trial. *See* **Exhibit B**.

13.     CaseStack has retained the undersigned to represent it in this matter and pursuant to Section 3.7 of the Terms of Service, Korex must pay for said fees. *See* **Exhibit A**.

WHEREFORE, Plaintiff, CASESTACK, LLC. demands judgment in its favor and against Defendant THE KOREX CORPORATION, for damages in the amount of $773,078.64 together with interest (including prejudgment interest at the statutory rate), costs, attorneys' fees and such other and further relief as the Court deems just.

2

## COUNT II—OPEN ACCOUNT

14.     CaseStack incorporates and re-alleges paragraphs 1-9 of this Complaint as if fully set forth herein.

15.     Korex owes CaseStack the sum of $773,078.64 for services rendered and invoices. *See* **Exhibit B**.

16.     CaseStack has demanded payment and Korex has failed and refused to pay. A true and correct copy of the November 2, 2022, demand letter is attached hereto and incorporated by reference as **Exhibit C**.

17.     To date Korex has failed and refused to remit the sum due and owing.

WHEREFORE, Plaintiff, CASESTACK, LLC, demands judgement in its favor and against Defendant, THE KOREX CORPORATION, for damages in the amount of $773,078.64 together with interest (including prejudgment interest at the statutory rate), costs, attorneys' fees, and such other and further relief as the Court deems just.

## COUNT III – ACCOUNT STATED

18.     CaseStack incorporates and re-alleges paragraphs 1-9 of this Complaint as if fully set forth herein.

19.     Before filing this action, CaseStack and Korex had business transactions between them which resulted in Korex owing CaseStack the sum of $773,078.64. These amounts are reflected in the invoices CaseStack issued to Korex for services rendered. *See* **Exhibit B**.

20.     CaseStack tendered invoices to Korex for services rendered and amounts owed and Korex did not object.

21.     Of the $773,078.64 owed on the account, Korex has paid $0.00.

3

22.     Korex owes $773,078.64 that is immediately due with interest on the account since at least May of 2022.

23.     CaseStack has demanded payment and Korex has failed and refused to pay. *See* **Exhibit C**.

WHEREFORE, Plaintiff, CASESTACK, LLC. demands judgment in its favor and against Defendant THE KOREX CORPORATION, for damages in the amount of $773,078.64 together with interest (including prejudgment interest at the statutory rate), costs, attorneys' fees and such other and further relief as the Court deems just.

## COUNT IV – UNJUST ENRICHMENT

24.     CaseStack incorporates and re-alleges paragraphs 1-9 of this Complaint as if fully set forth herein.

25.     This is an action for unjust enrichment in excess of $773,078.64 in the event there is an infirmity with CaseStack's claims at law.

26.     CaseStack conferred a benefit to Korex with Korex's knowledge and consent and with the expectation that CaseStack would be paid for the same.

27.     Specifically, CaseStack provided transportation logistics services to Korex. Said services and advances ensured that Korex's products were transported to the destination required by Korex.

28.     Korex knowingly and voluntarily accepted and retained the benefit of CaseStack's services.

29.     The reasonable value of the services and advances provided by CaseStack that remain unpaid is in excess of $773,078.64, the exact amount to be proven at trial.

4

30. The circumstances are such that it would be inequitable for Korex to retain the benefits of CaseStack's services without being compelled to pay CaseStack for the same.

31. Despite issuing a demand, Korex has refused to pay CaseStack for the services rendered.

32. As a result of non-payment, Korex has been damaged and Korex has been unjustly enriched and benefited from the damage, harm and to the detriment of CaseStack.

WHEREFORE, Plaintiff, CASESTACK, LLC demands judgment in its favor and against Defendant THE KOREX CORPORATION for damages in the amount of $773,078.64 together with interest (including prejudgment interest at the statutory rate), costs, attorneys' fees and such other and further relief as the Court deems just.

## COUNT V – QUANTUM MERUIT

33. CaseStack incorporates and re-alleges paragraphs 1-9 of this Complaint as if fully set forth herein.

34. This is an action for damages in quantum meruit brought in the alternative in the event there is an infirmity with CaseStack's claim at law.

35. CaseStack provided a benefit in the form of services to Korex.

36. Specifically, CaseStack provided transportation logistics services to Korex, and transported loads tendered by Korex to locations at the direction of and on behalf of Korex.

37. Korex requested said services, assented to said services and advances, and received the value and benefit of said services and advances.

38. Korex knew or should have known that CaseStack expected to be compensated for its services and agreed to pay for the same.

5

39.     CaseStack reasonably expected to be compensated in exchange for the services it
rendered to Korex.

40.     CaseStack provided the services and advanced costs as Korex requested and in
reliance on Korex's promise to compensate for said services.

41.     The reasonable value of said services that remains unpaid totals in excess of
$773,078.64, the exact amount to be proven at trial.

42.     CaseStack is entitled to the reasonable value of the services provided to Korex for
which Korex has not yet paid.

43.     CaseStack has been damaged because of Korex's non-payment.

WHEREFORE, Plaintiff, CASESTACK, LLC. demands judgment in its favor and
against Defendant, THE KOREX CORPORATION, for damages in the amount of $773,078.64
together with interest (including prejudgment interest at the statutory rate), costs, attorneys' fees,
and such other and further relief as the Court deems just.

Dated this 3rd day of January 2023

Respectfully submitted,

CASESTACK, LLC

By:     /s/ LeeAnn M. Crow
        One of the attorneys for Plaintiff

JAMES J. ROCHE & ASSOCIATES
Attorneys for Plaintiff
642 North Dearborn Street
Chicago, Illinois 60654
(312) 335-0044
#21248

2023LA000001

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 20864247
2023LA000001
FILEDATE: 1/3/2023 8:37 AM
Date Submitted: 1/3/2023 8:37 AM
Date Accepted: 1/3/2023 10:20 AM
LG

# Exhibit A

DuPage #21248 clk

DocuSign Envelope ID: 3DBF04E4-0F09-407B-A223-80739B22C6CE

### Master Logistics Services Agreement

This Master Logistics Services Agreement is made and entered into this 24th day of September, 2020 (the "Effective Date") by and between, CaseStack, LLC, a Delaware limited liability company ("CaseStack") and **The Korex Corporation** ("Customer"). CaseStack and Customer shall be referred to herein each as a "Party" and collectively, as the "Parties". "Agreement", as the term is used herein, refers to this Master Logistics Services Agreement, the Conditions (as defined below) and all appendices, schedules, amendments, exhibits, SOWs, and other documents incorporated herein or otherwise signed by the parties and making reference hereto.

1. **Services**.

(a)   Conditions of Service.  CaseStack's Services, as defined below, are governed by Terms and Conditions of Storage, Transportation and Cross-Dock Services available at www.casestack.com and as amended from time to time in accordance therewith (the "Conditions").  Capitalized terms defined in the Conditions and not defined herein shall be given the meaning assigned to them in the Conditions.

(b)   Goods and Assumptions.  Attached to this Agreement and incorporated herein by reference is Appendix A (which may include related Schedules), which Appendix contains descriptions of the Goods, rates and charges, operational rules, and other assumptions.  Appendix A shall be signed by the Parties and may be amended or superseded in a writing signed by an authorized representative of each Party.

2. **Term and Termination**.

(a)   Term.  This Agreement shall commence on the Effective Date and continue for a period of one (1) year ("Initial Term").  Unless terminated earlier as herein provided, This Agreement shall automatically renew for successive one (1) year terms (each, an "Additional Term") until the Agreement is terminated in accordance with the terms herein.  The Initial Term and any Additional Term may be collectively referred to herein as the "Term".

(b)   No-Cause Termination. Either Party may terminate this Agreement or any SOW hereunder at any time by providing written notice of not less than ninety (90) calendar days.

   (i)        Early Termination Fee.  If Customer terminates the Agreement with less than ninety (90) days' notice (other than pursuant to Customer's rights to terminate the Agreement for-cause as set forth below), or if CaseStack otherwise determines that Customer, through its conduct, statements or omissions, is not fulfilling its obligations to use CaseStack's services under the Agreement (including, but not limited to, failure or refusal to use CaseStack's services at historic or agreed upon levels or Customer's transition to a replacement provider), Customer will be liable for an "Early Termination Fee" owed to CaseStack.  The amount of the Early Termination Fee shall be the 50% of average gross revenue owed by Customer to CaseStack on a daily basis (the "Average Daily Revenue") during the ninety (90) days preceding either Customer's notice of termination or CaseStack's reasonable determination that Customer is not fulfilling its obligations to use CaseStack's services.  If Customer has provided notice to CaseStack of termination, but did not provide ninety days' notice, then the Early Termination Fee will be ninety minus the number of days of notice provided, which difference will be multiplied by 50% of the Average Daily Revenue.  If, in the alternative, CaseStack determines that Customer is not fulfilling its obligations to use CaseStack's services, then the Early Termination Fee shall be ninety multiplied by 50% of the Average Daily Revenue.

Case: 1:23-cv-00214 Document #: 1-1 Filed: 01/13/23 Page 11 of 52 PageID #:15

(ii) Early Termination Fee Exceptions. The Early Termination Fee noted above shall not apply to termination by Customer if all of the following are met: (i) Customer only uses CaseStack's Services with respect to Goods in a Consolidation Program (as defined in Appendix A to the Agreement); (ii) the retail consignee of such Consolidation Program discontinues purchasing from Customer (in which case, Customer will provide proof, as reasonably requested by CaseStack, of such discontinuance); and (iii) Customer indicates in its notice of termination that it is terminating the Agreement due to the retailer's discontinuance of purchases from Customer.

(c)  Termination for Material Breach.  Subject to Conditions' Section 2.1, either Party may immediately terminate the Agreement or, in such terminating Party's sole discretion, any SOW, provided that: (a) the other Party is in material breach of its obligations under the Agreement or Conditions, (b) the terminating Party notifies the other Party in writing of the material breach, and (c) such other Party fails to cure the material breach to the reasonable satisfaction of the Party providing notice within fifteen (15) calendar days after the receipt of such notice. Notwithstanding anything stated herein to the contrary, CaseStack may immediately terminate the Agreement or any SOW hereunder upon Customer's failure to pay any sums that Customer is obligated to pay within the Payment Terms set forth in Section 3.

3.  Payment Terms.  Customer shall pay all invoices within thirty (30) calendar days of the date of such invoices. All payments shall be made in US dollars, at CaseStack designated remittance address.

4.  Conflicts Provision. If a conflict exists between or among provisions within this Agreement, specific terms will control over general provisions. If a conflict exists between the main body of this Agreement, Appendix A, the Conditions and any schedule (including a Consolidation Program schedule), the order or precedence shall be as follows from order of highest priority to lowest: schedule, appendix, the main body of this Agreement, and Conditions.  The Parties agree that pursuant to 49 U.S.C. § 14101(b)(1) they expressly waive any and all rights and remedies under Part B of Subtitle IV, to Title 49 of the U.S. Code (the "Acts") to the extent that they conflict with the provisions of this Agreement. No Party shall challenge any provision of the Agreement on the grounds that any such provision or provisions violates the waived rights and remedies under the Acts.

5.  Notices.  All notices required to be delivered hereunder shall be delivered via one or more of the following methods, with the earliest receipt date as the effective date: (a) overnight courier with tracking capabilities, in which case, notice will be effective on the date received as evidenced by tracking receipt provided by such courier (b) registered or certified mail, return receipt requested, in which case, notice will be effective on the date signed for, or (c) electronic mail, return receipt requested, in which case, notice will be effective on the date received as evidenced by the read receipt. Notices shall be addressed:

To Customer as follows:                    To CaseStack as follows:
The Korex Corporation                      3000 Ocean Park Blvd.
50000 W. Pontiac Trail                     Suite 1000
Wixom, MI 48393                            Santa Monica, CA 90405

Attn: _____               Attn:  Contracts Department
Facsimile: ___-___-____                    Facsimile: 310-460-1836
Telephone: ___-___-____                    Telephone: 310-473-8885
E-mail:_____                E-mail: contracts@casestack.com

or at such other address as shall have been provided by like notice to the sender of any such notice or other communication by the other Party.

6.  Entire Agreement.  This Agreement and each schedule, exhibit, appendix, SOW and corresponding amendment embodies the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof. No representation, undertaking or warranty given by CaseStack shall be binding unless set

2

forth herein, or if subsequent to the execution of this Agreement by the Parties, is set forth in writing and signed by a duly authorized representative of each of the Parties.

7. **Interpretation**.

(a)    Severability.  The invalidity or unenforceability of any term of this Agreement shall not invalidate or otherwise affect any other terms hereof.

(b)    Counterparts.  This Agreement may be executed in any number of counterparts and any Party hereto may execute any such counterpart, each of which will be considered an original, but all of which together will constitute one and the same instrument.  Delivery of this Agreement may be accomplished by electronic transmission.  This Agreement, including any appendix, exhibit, SOW or schedule, may be executed via electronic signature of the parties or their authorized representatives.  Any such electronic signature shall be binding on the respective parties and neither party shall challenge the validity of any such electronic signature, nor challenge the validity of this Agreement based thereon.

(c)    Captions.  The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Agreement or any of the provisions thereof.

(d)    Amendment.  Except as otherwise expressly set forth herein, this Agreement, or any term thereof, may be amended, changed or otherwise modified only by written amendment signed by both parties.

(e)    Incorporation by Reference.  The above stated recitals and any schedules, exhibits, SOWs, corresponding amendments, and other attachments hereto are hereby incorporated by reference.

(f)    Negotiation.  This Agreement has been negotiated by the Parties hereto.  In no event shall any presumption against the drafter apply to interpretation of this Agreement.

CASESTACK:

By: _Pei-Ching Ling_
    —8F0C8CE56F8A426...

Name: _Pei-Ching Ling_

Title: _Vice President of Finance_
       10/16/2020
Date: _____

THE KOREX CORPORATION:

By: _Frank Gray_
    —622CB8DA32EE47C...

Name: _____

Title: _____General Manager_____

Date: _10/16/2020_____

3

## APPENDIX A

### Service Fees, Charges and Assumptions

This Appendix A is incorporated into and made a part of the Master Logistics Services Agreement ("MLSA") entered into by and between CaseStack, LLC ("CaseStack") and **The Korex Corporation** ("Customer") with an Effective Date of September 24, 2020 (the "Agreement"). This Appendix A shall take effect on September 24, 2020 and shall remain in full force and effect while the Agreement is in effect unless and until superseded by a subsequently dated Appendix A signed by an authorized representative of the Parties. Capitalized terms shall have the same meaning in this Appendix A as in the Agreement.

1. **Goods and Assumptions**. The following Assumptions regarding Customer's Goods were used in the development of the Service Fees and Charges contained herein.

| GENERAL SERVICE ASSUMPTIONS | |
|---|---|
| COMMODITY DESCRIPTION | Cleaners |
| PALLET DIMENSIONS (L X W X H IN INCHES) | 48" x 40" x ≤ 60" |
| NMFC | 48580 |
| FREIGHT CLASSIFICATION | 70 |
| PALLETS DOUBLE STACKABLE ON TRUCKS? | Single / Double |
| ANNUAL TURN | N/A |
| **WAREHOUSE FULFILLMENT CENTER (WFC)** | **MW** |
| NUMBER OF SKUS IN PRODUCT LINE | 7 |
| TEMPERATURE CONTROL? (Y/N) | No |
| ORM-D, FLAMMABLE, OR HAZARDOUS GOODS | 0% |
| PALLETS IN INVENTORY EACH MONTH | N/A |

| INBOUND ORDERS | |
|---|---|
| **Order configuration** | **MW** |
| % OF ORDERS SLIPSHEETED | |
| % OF ORDERS PALLETIZED | 100% |
| % OF ORDERS FLOOR-LOADED | |
| NUMBERS OF TRAILERS PER MONTH | 54 |
| NUMBER OF 20' CONTAINERS PER MONTH | |
| NUMBER OF 40' CONTAINERS PER MONTH | |
| NUMBER OF CASES PER OCEAN CONTAINER | |
| PALLETS PER ORDER | 29 |
| CASES PER PALLET | 62 |
| PALLET WEIGHT (LBS.) | 1,388 |
| CASE WEIGHT (LBS.) | 21.90 |
| LINES PER ORDER | ≤ 7 |

4

| OUTBOUND ORDERS | |
|---|---|
| **ORDER CONFIGURATION** | **MW** |
| % OF ORDERS ON WOOD | 100% |
| % OF ORDERS ON SLIPSHEET | |
| % OF ORDERS AS FLOOR-LOADED | |
| % OF ORDERS AS CASES | |
| **SHIPPING MODE** | |
| % OF ORDERS VIA CONSOLIDATION | 100% |
| % OF ORDERS VIA PARCEL | |
| % OF ORDERS VIA LTL | |
| % OF ORDERS VIA FTL | |
| % OF ORDERS VIA OTHER MODES - CPU | |
| PALLETS PER ORDER | 4 – 5 |
| CASES PER PALLET | 62 |
| PALLET WEIGHT (LBS.) | 1,388 |
| CASE WEIGHT (LBS.) | 21.90 |
| ORDERS PER MONTH | 346 |
| CASES PER ORDER | 279 |
| LINES PER ORDER | 2 - 3 |
| UCC 128 LABEL (Y/N) | N |
| SPECIAL LABELING OTHER THAN UCC 128 (Y/N) | N |
| CASES PICKED AS A % OF TOTAL CASES SHIPPED | N/A |

Locations: C = Central (Dallas), MW = Midwest (IL), NE = Northeast (PA), NW = Northwest (WA),
SE = Southeast (Atlanta), SW = Southwest (Los Angeles), ON = Ontario, Canada

**2. Services**. The enumerated Services below, which is not an exhaustive list of Services that CaseStack may agree to provide, will generally consist of the following:

(a) Inbound handling and receiving, including unloading containers or trailers, receiving cases on the floor or on pallets, sorting and stacking cases into single SKU pallets, stretch wrapping pallets, moving pallets to storage area, and tracking storage locations

(b) Storage of Goods in racks or on the floor

(c) Outbound handling and order fulfillment, including picking and packing eaches, inner packs, and/or master cartons, repacking into cartons, creating mixed SKU pallets, stretch wrapping pallets, labeling shipping units based on retailer or Client requirements, and loading pallets onto truck for outbound shipping.

(d) Returns processing, including receiving, inspecting, and put-away/disposition.

(e) Special projects, such as kitting, reconfiguring master cases or pallets, and repackaging Goods.

(f) Technology support for online orders, inventory tracking, and EDI capabilities.

(g) Cross-Docking Service.

(i) Inbound handling and receiving, including unloading containers or trailers, receiving pallets (no case count provided), moving pallets to staging area

(ii) Outbound handling, including loading pallets onto trucks for outbound shipping.

(iii) FTL and LTL Service.

(iv) Inbound transportation management, including carrier selection and arranging for port pickup.

(v)     Outbound transportation management, including carrier selection and routing per retailer or Client's requirements.

(vi)    Technology support for online orders and shipment tracking.

(vii)   Managing prepaid transportation carriers or freight service providers to ship or to deliver on time.

**3.  Start-Up Charges.** Start-up charges are based upon the Assumptions set forth above. All start-up charges, if any, are payable in advance, and are non-refundable.

| Description | Rate (USD) | | Additional Explanation |
|---|---|---|---|
| | **MW** | **UOM** | |
| 1   Warehouse Setup | Waived | Each | |

**4.  Minimum Charge.** A minimum monthly charge of $5,000 will be in effect for each open account of a Customer (requiring separate records and billing). This minimum monthly charge will consider total monthly expenditures with CaseStack, including all start-up, transportation, warehouse fulfillment, additional services, and technology fees and charges. **The minimum monthly charge is waived while Customer remains in one of CaseStack's Consolidation Programs.**

**5.  Warehouse Fulfillment Charges**

| Description | Rate (USD) | | Additional Explanation |
|---|---|---|---|
| | **MW** | **UOM** | |
| **Storage** | | | |
| 1   Initial storage - ≤ 60" | $6.95 | Pallet | Assessed based on inbound; minimum of 1 pallet per SKU per lot code |
| 2   Recurring storage - ≤ 60" | $8.95 | Pallet | Assessed on first day of each month |
| **Handling** | | | |
| 1   Cross Dock Handling | NA | Pallet | Included in CWT rates |
| 2   Case pick | $0.36 | Case | |
| 3   Pallet label/placard* | $0.35 | Label | |
| 4   Case label* | $0.35 | Label | |
| 5   Stretch wrap* | $3.65 | Pallet | |
| 6   LTL Pallet Management Fee | $6.00 | Pallet | |
| **Other charges** | | | |
| 1   Pallet purchases - 48" x 40" (used)* | $8.80 | Pallet | |
| 2   Pallet purchases - 48" x 40" Grade A (new)* | $22.00 | Pallet | |
| 3   Hourly labor - regular hours* | $45.00 | Hour | 15 minutes minimum, 15-minute increments |
| 4   Hourly labor - overtime, weekend, holidays* | $65.00 | Hour | 15 minutes minimum, 15-minute increments; one supervisor and one staff required |
| 5   Cancel order - administrative labor* | $25.00 | Order | |
| 6   Change order - administrative labor* | $25.00 | Order | |
| 7   Rush order* | $35.00 | Order | Order provided for same-day shipping or orders provided after 12pm local WFC time to ship next day. |
| 8   Inbound receipt without advance notice* | $35.00 | Order | |
| 9   Inbound receipt arriving late to fill consolidation program orders* | $95.00 | Order | Applies to each inbound order arriving after the order issuance date. |
| 10  Supplies and materials* | 15% | -- | Based on cost plus 15% margin. |
| 11  Request for bill of lading (BOL), proof of delivery (POD), or drop trailer stamp (DTS) copy* | $7.50 | Order | Charged if requests for signed BOLs, PODs, and DTSs are more than 5% of total orders in the same calendar month as the request. |
| Locations: C = Central (Dallas), MW = Midwest (IL), NE = Northeast (PA), NW = Northwest (WA), SE = Southeast (Atlanta), SW = Southwest (Los Angeles) | | | |
| * Applies to both cross dock and warehouse (inventory hold) Customers if the service is used | | | |

**6.  Transportation Charges**

(a) LTL Shipments not Included in a Retailer Consolidation Shipment. LTL Shipments that are not part of a Retailer Consolidation shipment are charged at the Base Rate minus a 65% discount, as reflected on

www.CaseStack.com (not applicable to Hawaii, Alaska, Canada, Mexico, or other international locations). This discount percentage pricing is based on CaseStack routing the order through the least expensive LTL Service Provider. If a motor carrier different from CaseStack's least expensive LTL Service Provider is preferred or required by Customer, then Customer acknowledges and agrees that pricing may vary.

(b) Parcel Services. Parcel Services are priced based on CaseStack's cost plus 15% margin.

(c) FTL Services and other Transportation Services other than Consolidation Program, LTL Shipments, or Parcel. FTL Services and other transportation Services other than Consolidation Program, LTL, or parcel are priced based on a spot quote basis. Customer may request a quote from CaseStack prior to shipping.

(d) Fuel Surcharge and Accessorial Charges.

    (i)    Fuel surcharge is charged based on the Fuel Surcharge table as provided on www.casestack.com, unless otherwise indicated in the Schedule(s).

    (ii)    Fuel surcharge and accessorial charges are not discounted and will be additional charges added to base freight/transportation charges.

    (iii)    Applicable accessorial charges (such as lumper, sort and segregate, driver detention, etc.) will be added to the base freight/transportation charges as needed.

## 7. Additional Services

| Description | Rate (USD) | UOM |
|---|---|---|
| Monthly maintenance | Waived | Per month |
| Initial online training (via web) | TBD | Each |
| Additional online training (via web) | TBD | Each |
| VPL Upload | $500 | One Time |
| CSV Upload | $850 | One Time |
| EDI Integration - 856 Mapping | $1,250 | Each |
| EDI Integration - 940 Mapping | $1,250 | Each |
| EDI Integration - 943 Mapping | $1,250 | Each |
| EDI Integration - 944 Mapping | $1,250 | Each |
| EDI Integration - 945 Mapping | $1,250 | Each |
| On-site training | Quote | Quote |
| Customized reports | Quote | Quote |

Fees for additional services not contemplated above shall be agreed upon by CaseStack and Customer on an as-needed basis.

**CASESTACK:**

By: _Pei-Ching Ling_

Name: Pei-Ching Ling

Title: Vice President of Finance

Date: 10/16/2020

**THE KOREX CORPORATION:**

By: _Frank Gray_

Name: Frank Gray

Title: General Manager

Date: 10/16/2020

**CASESTACK, LLC**
**MASTER LOGISTICS SERVICES AGREEMENT**
**SCHEDULE FOR**
**WALMART CONSOLIDATION PROGRAM**
**THE KOREX CORPORATION**

Issuance Date: September 24, 2020
Effective Date of Schedule: September 24, 2020

This Schedule to Appendix A to the CaseStack, LLC Master Logistics Services Agreement sets forth terms and conditions, including pricing, applicable to the Walmart Consolidation Program ("WMCP"). CaseStack may revise this Schedule at any time. The changed Conditions are in effect immediately upon the Effective Date of Schedule identified therein. The version of these Conditions in effect on the date Services are provided is the version that applies to the specific Services in question.

1. **Terms and Conditions of WMCP**

   a. Walmart ("WM") designates suppliers' orders that WM wants to have included in the WMCP. Suppliers included in the WMCP are added by WM to a "Vendor Pool List" by WM. WM also designates specific purchase orders on the Vendor Pool List. An order only qualifies for the WMCP if both the Customer and the specific order are included on the Vendor Pool List.
   b. If, for any reason, all or any part of a WMCP order ships other than on an FTL consolidation to WM or its authorized delivery point, standard transportation pricing under Appendix A is applicable. Reasons an order might not be included in the WMCP:
      i. sufficient inventory is not received by CaseStack prior to the order issuance date, and/or
      ii. orders are not received by CaseStack on the order issuance date by 2:00PM local WFC time if the order issuance date is a business day, or by 10:00AM local WFC time on the first business day after the order issuance date if the order issuance date is a non-business day
   c. The WMCP transportation pricing will be calculated based on the greater of (regardless of actual shipped quantity and weight):
      i. the weight provided by WM plus pallet weight (gross weight to include pallet)
      ii. the quantity WM ordered multiplied by the product weight in CaseStack's Product Catalog (gross weight to include pallet), or
      iii. Customer's reported weight (gross weight to include pallet)

2. **Transportation Charges**

   a. Orders in the WMCP

      i. Transportation Pricing (does not include fuel surcharge or accessorial charge)

| Origin / WFC | RDC# | Destination City | Destination State | Rate Per CWT | | Minimum Charge Per Order |
|---|---|---|---|---|---|---|
| | | | | If Purchase Order is ≤ 15,000 lbs. | If Purchase Order is > 15,000 lbs. | |
| Wixom, MI | 7035 | Alachua | FL | $7.75 | $6.98 | $10.00 |
| Wixom, MI | 7033 | Apple Valley | CA | $9.42 | $8.48 | $10.00 |
| Wixom, MI | 7039 | Beaver Dam | WI | $2.38 | $2.14 | $10.00 |
| Wixom, MI | 6094 | Bentonville | AR | $5.61 | $5.05 | $10.00 |
| Wixom, MI | 6011 | Brookhaven | MS | $6.81 | $6.13 | $10.00 |
| Wixom, MI | 6020 | Brooksville | FL | $8.63 | $7.77 | $10.00 |
| Wixom, MI | 6031 | Buckeye | AZ | $15.43 | $13.89 | $10.00 |
| Wixom, MI | 6043 | Coldwater | MI | $3.24 | $2.92 | $10.00 |
| Wixom, MI | 6006 | Cullman | AL | $6.26 | $5.63 | $10.00 |
| Wixom, MI | 6010 | Douglas | GA | $7.90 | $7.11 | $10.00 |

## CASESTACK, LLC
## MASTER LOGISTICS SERVICES AGREEMENT
## SCHEDULE FOR
## WALMART CONSOLIDATION PROGRAM
## THE KOREX CORPORATION

| Origin / WFC | RDC# | Destination City | Destination State | Rate Per CWT | | Minimum Charge Per Order |
|---|---|---|---|---|---|---|
| | | | | If Purchase Order is ≤ 15,000 lbs. | If Purchase Order is > 15,000 lbs. | |
| Wixom, MI | 7038 | Fort Pierce | FL | $8.00 | $7.20 | $10.00 |
| Wixom, MI | 7026 | Grantsville | UT | $10.96 | $9.86 | $10.00 |
| Wixom, MI | 6024 | Grove City | OH | $4.03 | $3.63 | $10.00 |
| Wixom, MI | 6037 | Hermiston | OR | $16.93 | $15.24 | $10.00 |
| Wixom, MI | 6040 | Hope Mills | NC | $6.97 | $6.27 | $10.00 |
| Wixom, MI | 6066 | Hopkinsville | KY | $3.23 | $2.91 | $10.00 |
| Wixom, MI | 6054 | La Grange | GA | $7.03 | $6.33 | $10.00 |
| Wixom, MI | 6019 | Loveland | CO | $9.91 | $8.92 | $10.00 |
| Wixom, MI | 6038 | Marcy | NY | $9.19 | $8.27 | $10.00 |
| Wixom, MI | 6025 | Menomonie | WI | $3.03 | $2.73 | $10.00 |
| Wixom, MI | 6039 | Midway | TN | $5.42 | $4.88 | $10.00 |
| Wixom, MI | 7045 | Mount Crawford | VA | $7.59 | $6.83 | $10.00 |
| Wixom, MI | 6009 | Mount Pleasant | IA | $3.24 | $2.92 | $10.00 |
| Wixom, MI | 6016 | New Braunfels | TX | $8.57 | $7.71 | $10.00 |
| Wixom, MI | 6048 | Opelousas | LA | $8.20 | $7.38 | $10.00 |
| Wixom, MI | 6035 | Ottawa | KS | $4.28 | $3.85 | $10.00 |
| Wixom, MI | 6036 | Palestine | TX | $7.79 | $7.01 | $10.00 |
| Wixom, MI | 6012 | Plainview | TX | $10.06 | $9.05 | $10.00 |
| Wixom, MI | 6021 | Porterville | CA | $10.45 | $9.41 | $10.00 |
| Wixom, MI | 6030 | Raymond | NH | $10.80 | $9.72 | $10.00 |
| Wixom, MI | 6026 | Red Bluff | CA | $10.69 | $9.62 | $10.00 |
| Wixom, MI | 6068 | Sanger | TX | $7.81 | $7.03 | $10.00 |
| Wixom, MI | 7036 | Sealy | TX | $8.85 | $7.97 | $10.00 |
| Wixom, MI | 6018 | Searcy | AR | $5.74 | $5.17 | $10.00 |
| Wixom, MI | 6017 | Seymour | IN | $3.61 | $3.25 | $10.00 |
| Wixom, MI | 6070 | Shelby | NC | $5.52 | $4.97 | $10.00 |
| Wixom, MI | 7034 | Smyrna | DE | $8.27 | $7.44 | $10.00 |
| Wixom, MI | 6092 | Spring Valley | IL | $1.84 | $1.66 | $10.00 |
| Wixom, MI | 6069 | St. James | MO | $4.64 | $4.18 | $10.00 |
| Wixom, MI | 6023 | Sutherland | VA | $7.40 | $6.66 | $10.00 |
| Wixom, MI | 6080 | Tobyhanna | PA | $7.73 | $6.96 | $10.00 |
| Wixom, MI | 6027 | Woodland | PA | $6.54 | $5.89 | $10.00 |

b. Orders to Walmart Not a Part of the Walmart Consolidation Program (for example, buyer-driven or promotional orders) but Consolidated on the WMCP Trucks

    i. Transportation Pricing (does not include fuel surcharge or accessorial charge)

| Origin / WFC | RDC# | Destination City | Destination State | Rate Per CWT | | Minimum Charge Per Order |
|---|---|---|---|---|---|---|
| | | | | If Purchase Order is ≤ 15,000 lbs. | If Purchase Order is > 15,000 lbs. | |
| Wixom, MI | 7035 | Alachua | FL | $7.75 | $6.98 | $10.00 |
| Wixom, MI | 7033 | Apple Valley | CA | $9.42 | $8.48 | $10.00 |
| Wixom, MI | 7039 | Beaver Dam | WI | $2.38 | $2.14 | $10.00 |
| Wixom, MI | 6094 | Bentonville | AR | $5.61 | $5.05 | $10.00 |

DocuSign Envelope ID: 3DBF04E4-0F09-407B-A223-80739B22C6CE

## CASESTACK, LLC
## MASTER LOGISTICS SERVICES AGREEMENT
## SCHEDULE FOR
## WALMART CONSOLIDATION PROGRAM
## THE KOREX CORPORATION

| Origin / WFC | RDC# | Destination City | Destination State | Rate Per CWT | | Minimum Charge Per Order |
|---|---|---|---|---|---|---|
| | | | | If Purchase Order is ≤ 15,000 lbs. | If Purchase Order is > 15,000 lbs. | |
| Wixom, MI | 6011 | Brookhaven | MS | $6.81 | $6.13 | $10.00 |
| Wixom, MI | 6020 | Brooksville | FL | $8.63 | $7.77 | $10.00 |
| Wixom, MI | 6031 | Buckeye | AZ | $15.43 | $13.89 | $10.00 |
| Wixom, MI | 6043 | Coldwater | MI | $3.24 | $2.92 | $10.00 |
| Wixom, MI | 6006 | Cullman | AL | $6.26 | $5.63 | $10.00 |
| Wixom, MI | 6010 | Douglas | GA | $7.90 | $7.11 | $10.00 |
| Wixom, MI | 7038 | Fort Pierce | FL | $8.00 | $7.20 | $10.00 |
| Wixom, MI | 7026 | Grantsville | UT | $10.96 | $9.86 | $10.00 |
| Wixom, MI | 6024 | Grove City | OH | $4.03 | $3.63 | $10.00 |
| Wixom, MI | 6037 | Hermiston | OR | $16.93 | $15.24 | $10.00 |
| Wixom, MI | 6040 | Hope Mills | NC | $6.97 | $6.27 | $10.00 |
| Wixom, MI | 6066 | Hopkinsville | KY | $3.23 | $2.91 | $10.00 |
| Wixom, MI | 6054 | La Grange | GA | $7.03 | $6.33 | $10.00 |
| Wixom, MI | 6019 | Loveland | CO | $9.91 | $8.92 | $10.00 |
| Wixom, MI | 6038 | Marcy | NY | $9.19 | $8.27 | $10.00 |
| Wixom, MI | 6025 | Menomonie | WI | $3.03 | $2.73 | $10.00 |
| Wixom, MI | 6039 | Midway | TN | $5.42 | $4.88 | $10.00 |
| Wixom, MI | 7045 | Mount Crawford | VA | $7.59 | $6.83 | $10.00 |
| Wixom, MI | 6009 | Mount Pleasant | IA | $3.24 | $2.92 | $10.00 |
| Wixom, MI | 6016 | New Braunfels | TX | $8.57 | $7.71 | $10.00 |
| Wixom, MI | 6048 | Opelousas | LA | $8.20 | $7.38 | $10.00 |
| Wixom, MI | 6035 | Ottawa | KS | $4.28 | $3.85 | $10.00 |
| Wixom, MI | 6036 | Palestine | TX | $7.79 | $7.01 | $10.00 |
| Wixom, MI | 6012 | Plainview | TX | $10.06 | $9.05 | $10.00 |
| Wixom, MI | 6021 | Porterville | CA | $10.45 | $9.41 | $10.00 |
| Wixom, MI | 6030 | Raymond | NH | $10.80 | $9.72 | $10.00 |
| Wixom, MI | 6026 | Red Bluff | CA | $10.69 | $9.62 | $10.00 |
| Wixom, MI | 6068 | Sanger | TX | $7.81 | $7.03 | $10.00 |
| Wixom, MI | 7036 | Sealy | TX | $8.85 | $7.97 | $10.00 |
| Wixom, MI | 6018 | Searcy | AR | $5.74 | $5.17 | $10.00 |
| Wixom, MI | 6017 | Seymour | IN | $3.61 | $3.25 | $10.00 |
| Wixom, MI | 6070 | Shelby | NC | $5.52 | $4.97 | $10.00 |
| Wixom, MI | 7034 | Smyrna | DE | $8.27 | $7.44 | $10.00 |
| Wixom, MI | 6092 | Spring Valley | IL | $1.84 | $1.66 | $10.00 |
| Wixom, MI | 6069 | St. James | MO | $4.64 | $4.18 | $10.00 |
| Wixom, MI | 6023 | Sutherland | VA | $7.40 | $6.66 | $10.00 |
| Wixom, MI | 6080 | Tobyhanna | PA | $7.73 | $6.96 | $10.00 |
| Wixom, MI | 6027 | Woodland | PA | $6.54 | $5.89 | $10.00 |

ii.   Orders to Walmart that are not a part of the WMCP AND are consolidated onto the trucks for the WMCP shall receive transportation/freight pricing based on the table above (pricing does not include fuel surcharge or accessorial charges, which shall be added separately and are not discounted).



**CaseStack, Inc.**

**Terms and Conditions of Storage, Transportation and Cross-Dock Services ("Conditions")**

*Issuance Date: September 28, 2015*

*Effective Date of Revised Conditions: September 28, 2015*

If a conflict exists between or among provisions of these Conditions and the Customer Service Agreement, Client Services Agreement, or Client Cross Dock Consolidation Program Agreement (Customer Service Agreement, Client Services Agreement, or Client Cross Dock Consolidation Program Agreement together known as "Long Form Agreement"), the Long Form Agreement shall control.

If a conflict exists between the Conditions, the main body of this Agreement, <u>Appendix A</u>, and any schedule (including a Consolidation Program schedule), the order or precedence shall be as follows from order of highest priority to lowest: schedule, appendix, Conditions, and the main body of this Agreement.

The use of this site is governed by these Conditions as set forth below.

These Conditions apply to any Services, as defined below, provided or arranged by CaseStack, Inc. By requesting that CaseStack provide Services, or otherwise tendering Goods to CaseStack or a Provider retained by CaseStack in the provision of Services, Customer expressly accepts these Conditions and warrants that acceptance of these Conditions has been authorized by a representative of Customer as of the date the Services were first provided to Customer by CaseStack. For purposes of these Conditions, "Customer" means the entity identified as such in any Master Logistics Services Agreement ("Agreement") to which CaseStack is a party, but also includes any person or entity at whose request, for whose benefit, or on whose behalf CaseStack provides any Services, including any third party logistics provider, shipper, consignor, consignee, beneficial cargo owner, or any agent acting on behalf of such person or entity.

**CaseStack may change these Conditions at any time. The changed Conditions are in effect immediately upon the Effective Date of Revised Conditions identified therein.** The version of these Conditions in effect on the date Services are provided is the version that applies to the specific Services in question. By way of example, if Goods are tendered to CaseStack for storage on June 15th, the Conditions are revised with an Effective Date of Revised Conditions of July 1st, and CaseStack arranges for transportation of the Goods on July 15th, the Conditions as in effect on July 1st apply to such transportation Services.

1. <u>Services</u>.

    1.1. <u>Services Defined</u>. CaseStack's services under these Conditions include arranging for various transportation, logistics and warehousing services with respect to goods in which Customer has an interest (the "Goods") to be performed by underlying third-party providers retained by CaseStack (each, a "Provider") including, but not limited to, the following: (i) surface transportation of full truckload shipments, meaning shipments with a volume of more than 700 cubic feet (each an "FTL Shipment"), via motor carrier between points in the United States as well as points between the United States and Canada ("FTL Service"); (ii) surface transportation of less-than-truckload shipments, meaning shipments with a volume of 700 cubic feet or less (each



an "LTL Shipment"), via motor carrier between points in the United States as well as points between the United States and Canada ("LTL Service"); (iii) transportation of individual parcels where each parcel is deemed by the underlying carrier-Provider to be a separate shipment ("Parcel Service"); (iv) warehousing storage of inventory Goods at Warehouse Fulfillment Centers ("WFC") owned or operated by Providers ("Warehouse Service"); and (v) cross docking and transloading services with respect to Goods remaining in transit ("Cross-Docking Service"). Any services arranged by CaseStack under these Conditions or any applicable SOW (as defined below) and provided by Providers shall collectively be referred to as the "Provider Services". CaseStack's arrangement of the Provider Services shall be referred to herein as the "Services". Customer acknowledges and agrees that any transportation of Goods via international ocean carriage is not subject to these Conditions and that any such services will be provided and invoiced directly by third parties to Customer.

    1.2.   Statement of Work.  If the Parties wish to address Services, assumptions, charges, or other operational parameters that are not covered by an existing Appendix, but determine that a revised Appendix is not necessary or appropriate (for instance, in order to address a limited or special project or request from Customer, the Parties may enter into mutually agreed upon Statements of Work (each a "SOW") addressing specific business issues including, but not limited to, description of Services, operational assumptions, specific operational requirements, pricing, etc.  Any such SOW must be executed by the Parties and will be incorporated into the Agreement.

    1.3.   Compliance with Applicable Law.

        1.3.1.  Agreement to Comply.  Except to the extent expressly set forth in these Conditions, CaseStack and Customer will each comply in all material respects with any and all laws and regulations applicable to their respective operations ("Applicable Law") in connection with the Services rendered hereunder.

        1.3.2.  Licensing. CaseStack shall obtain and maintain at all times while providing Services under these Conditions all licenses, qualifications, permits and approvals necessary to provide the Services.  CaseStack shall arrange for the provision of Provider Services only with Providers that are duly authorized to perform such Provider Services.  Without limiting the foregoing, CaseStack shall ensure that any entity directly engaged by CaseStack to provide interstate for-hire motor carrier services is authorized by the Federal Motor Carrier Safety Administration ("FMCSA") and does not hold an Unsatisfactory safety rating. Any Provider that is providing storage or handling services will hold all licenses required by Applicable Law.

2.  Termination.

    2.1.   Termination upon Occurrence of Insolvency Events.  Either Party may terminate the Agreement immediately and without further obligation to the other Party (except for the obligations incurred or accruing prior to the termination date) upon written notice in the event the other Party: (a) becomes insolvent or makes a general assignment for the benefit of creditors, (b) files or has filed against it any petition under applicable bankruptcy, insolvency, reorganization or similar debtor relief law which is not dismissed or discharged within thirty (30) calendar days of such filing, or (c) requests or suffers the appointment of a trustee or receiver, or the entry of an attachment or execution as to a substantial part of its business or assets.

    2.2.   Termination Due to Revision of Conditions or Consolidation Programs.  CaseStack will provide notice of any revision to the Conditions, or notice of any revision to the schedules addressing Consolidation Programs, at least thirty (30) days prior to the respective Effective Date of Revised Conditions or Effective Date of Schedule (for purposes of this provision, the respect Effective Date of Revised Conditions or the Effective Date of Schedule shall be referred to as the "Effective Date of Change").  Unless Customer expressly objects in writing prior to the Effective Date of Change, Customer will be bound by such revised Conditions or schedule as of the Effective Date of Change. If Customer objects to the revised Conditions or schedule in writing received by CaseStack prior to the Effective Date of Change, then Customer will remain bound by the then-current version of the Conditions or schedule and will not be subject to the revised Conditions or schedule.  In any such event, the Agreement will terminate upon expiration of the then-current Initial Term or Additional Term, as applicable.



2.3.    Effect of Termination or Expiration. Upon any expiration or termination of the Agreement, all rights and obligations of the Parties arising from the Agreement or Conditions shall cease, except that all obligations that accrued prior to the effective date of termination (including without limitation, all payment, confidentiality and indemnity obligations) shall survive expiration or termination. Termination of the Agreement shall also result in termination of any SOW entered into hereunder. In the event of termination or expiration, Customer agrees to remit in advance all outstanding balances owed to CaseStack and all intended fees and expenses associated with fulfillment and exit activities during the period up to the last date in which the Agreement is in effect. The Parties may mutually agree in writing to a plan regarding transition of services to a new provider, or otherwise regarding transfer of Goods, which plan may address revised rates and charges applicable to such services. Otherwise, Customer acknowledges and agrees that additional charges may apply if Services requested with respect to termination nor expiration are not otherwise covered by existing rates and charges. At termination, Customer will be responsible for advance payment for all services to be provided up to and including the date of termination or expiration, including, but not limited to, start-up, monthly minimum, warehouse fulfillment, warehouse labor associated with removing inventory from any WFC, disposal fees, supplies, transportation, technology, special services, and termination charges. Overpaid amounts will be refunded by CaseStack to Customer after all Goods have been removed from WFC and all claims are settled. Provided, further, Customer shall pay within five (5) days of receipt of an invoice following completion of all services contemplated hereunder all underpaid amounts.

3.  Payment Matters.

3.1.    Compensation for Services. Customer agrees to pay CaseStack, as compensation for the Services performed hereunder, the rates and charges set forth in Appendix A. In addition, Customer shall pay such other charges as CaseStack may impose with respect to services provided which are not covered by rates in Appendix A if Customer has consented in advance to such charges, or if CaseStack reasonably determines that CaseStack does not have sufficient time to obtain prior consent while complying with Customer's instructions or requests. Rates and charges imposed by CaseStack shall remain fixed for the Initial Term. In CaseStack's discretion, CaseStack may impose an annual cost of living increase during each Additional Term, which increase may be imposed by CaseStack at any time during such Additional Term. In addition, at any time while the Agreement is in effect, the Parties may mutually agree to a change in applicable rates and charges if such change is in a writing signed by the Parties.

3.2.    Assumptions. Certain assumptions were held by the Parties in entering into the Agreement and each applicable SOW. If, during the course of the Agreement, it is discovered that those assumptions were inaccurate or have materially changed, CaseStack will provide written notice to Customer of such inaccuracy or material change. CaseStack will present to Customer a new rate structure and/or scope of Services which Customer will have thirty (30) calendar days to either accept or reject. Upon rejection, CaseStack may immediately terminate the Agreement.

3.3.    Taxes and Fees. All payments to CaseStack shall be exclusive of federal, state, local and foreign taxes, duties, tariffs, levies and similar assessments, if any, on the use of the Services hereunder, and Customer agrees to bear and be responsible for the payment of all such charges. In addition, Customer shall solely be responsible for any property taxes imposed on the Goods themselves or any other taxes imposed on the sale of the Goods. If CaseStack advances any such charges, Customer will remit payment of such advanced amounts upon demand.

3.4.    Additional Payment Terms. Customer shall pay all invoices within the number of calendar days as set forth in the Agreement. All payments must be applied to the Invoices to which they are identified and Customer will assist CaseStack with CaseStack's reasonable efforts to properly allocate payments. No deductions or set offs shall be made by Customer to any Invoices for any reason whatsoever, except for those amounts included on the Invoices that do not accurately reflect the charges set forth herein ("Disputed Charges"). Disputed Charges shall be resolved by the Parties in accordance with the provisions herein.

3.5.    Disputed Charges. If Customer, in a writing received by CaseStack prior to the due date of the invoice in question, disputes any charge on an invoice in good faith as being not in accordance with the rates and charges

in Exhibit A, then, until the Parties resolve the Disputed Charges, Customer shall have the right to suspend payment of the Disputed Charges. Customer will make timely payment of any and all other charges other than the Disputed Charges. Customer shall provide a detailed written explanation substantiating its claim for Disputed Charges within thirty (30) days of the date of Customer's notice of such Disputed Charges. Any Disputed Charges that CaseStack determines in good faith should not have been billed to Customer will be promptly credited to Customer's account, and any Disputed Charges that CaseStack determines in good faith should have been billed to Customer will be paid by Customer within ten (10) calendar days. If Customer is not reasonably satisfied with CaseStack's determination, the Parties shall meet, through successively higher levels of management, if necessary, in a good faith effort to resolve the dispute. Subject to the foregoing, the Parties' obligations hereunder shall continue unabated during the duration of the dispute resolution process.

3.6.    Late Fees. Customer's failure to pay amounts due under any Invoice in accordance with the provisions of the Agreement may result in the imposition of late fees in the amount of 1% of the monthly delinquent balance.

3.7.    Collection Costs and Interest. In any referral for collection or action against Customer for amounts due to CaseStack, upon recovery by CaseStack, Customer shall pay all expenses of collection and/or litigation, including reasonable attorneys' fees, collection agency fees, and court costs.

3.8.    Lien Rights. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, CASESTACK SHALL HAVE A GENERAL LIEN ON ANY GOODS THAT HAVE COME INTO ITS POSSESSION OR THE POSSESSION OF ANY PROVIDER PROVIDING SERVICES HEREUNDER, AND ON ANY PROCEEDS THEREOF, FOR ANY AND ALL CHARGES DUE AND OWING TO CASESTACK REGARDLESS OF WHETHER THOSE CHARGES RELATE TO THE GOODS OR PROCEEDS AGAINST WHICH THE LIEN IS BEING ENFORCED.

4.  Customer Warranties and Obligations.

4.1.    Cooperation. Customer will provide CaseStack with such assistance, cooperation, and information that is timely, accurate, complete and sufficient as is reasonably necessary, or as is otherwise reasonably requested by CaseStack, in order to allow CaseStack to provide the Services. Nothing in this provision will be deemed to relieve Customer of the obligation to comply with any obligations set forth in any Agreement to which Customer is a party. Except where a longer time frame has been agreed upon, in no event will Customer provide less than forty-eight (48) hours' notice of Goods moving inbound to a WFC.

4.2.    Accurate Information. All information provided by Customer will be accurate and complete, and Customer will provide any and all information reasonably necessary in the performance of the Services. If the Services include performance or arrangement of any handling, storage or transportation of any goods, Customer is also solely responsible for advising CaseStack, in writing, of any and all obligations imposed by Applicable Law with respect to such Services. CaseStack shall have no obligation to comply with, and Customer shall defend, hold harmless and indemnify CaseStack against any fine, claim, loss, demand, action, suit or allegation arising from or related to failure to comply with any such requirements which have not been expressly acknowledged in a writing signed by CaseStack and CaseStack shall have no obligation to comply with or arrange for compliance with any special handling or storage requirements, including, notwithstanding any provisions of these Conditions to the contrary, those imposed by Applicable Law, unless agreed to in a writing signed by both Parties.

4.3.    Tender. All Goods being delivered to CaseStack will be tendered in a segregated manner, properly marked and packaged for handling, and adequately protected or covered as is necessary to protect the Goods during storage and transit. If Goods are ordered out of a WFC, a reasonable time will be allowed to CaseStack and the Provider to comply with such request. Goods will not be available for fulfillment until at least the business day following receipt of the Goods at a facility operated by a Provider.

4.4.    Goods to be in Possession of Providers. If Goods are not in the possession of the relevant Provider by a deadline established in these Conditions or an Agreement or a Schedule, then CaseStack shall have no liability arising therefrom or related thereto. Without limiting the foregoing, if Goods are not in a Provider's possession in accordance with cut-off times by which the Goods could be included in an outbound conveyance qualifying for



pricing under a Consolidation Program, CaseStack shall have no liability arising from or related to exclusion of the goods from a consolidated shipment.

4.5.    Authorization.  Customer represents and warrants that it is lawfully in possession of the Goods and has the right and authority to deliver them to and arrange for Services by CaseStack pursuant to these Conditions.

5.  Indemnification.

5.1.    Mutual Indemnity.  Each Party (an "Indemnitor") shall indemnify, defend and hold harmless the other Party, and its successors and assigns, and their respective affiliates, employees, directors, officers, stockholders, representatives and agents (each, an "Indemnified Party") from any and all direct and indirect losses, claims, demands, damages, liabilities, obligations, costs and/or expenses, including reasonable attorney's fees and costs, to the extent directly and proximately caused by (i) the negligence or intentional misconduct of the Indemnitor, or (ii) breach of Applicable Law by the Indemnitor. The Indemnified Party shall notify the Indemnitor in writing of any claim, demand or liability it deems to be covered by this subsection within fifteen (15) calendar days after it first has actual knowledge of the facts giving rise to such claim, demand or liability, or fifteen (15) calendar days prior to the running of any applicable statute of limitations with respect to such claim, demand or liability, whichever is earlier. The provisions of this subsection shall not apply to any claims against CaseStack arising from or related to loss, damage, destruction or delay of or to Goods.

5.2.    Expiration.  Failure by an Indemnified Party to tender any claim, demand, action or liability within the time frames set forth shall be an absolute waiver of the Indemnitor's indemnification obligation hereunder.

6.  Payment and Compensation.  If Customer is a party to an Agreement with CaseStack, this provision regarding payment and compensation shall not apply and the provisions of the Agreement shall govern such matters. In all other events, this provision shall apply to any Services rendered by CaseStack. Customer agrees to pay CaseStack, as compensation for the Services performed hereunder, CaseStack's then prevailing rates and charges, which will be provided to Customer upon request. Customer shall pay all invoices within fifteen (15) calendar days of the date of such invoices. All payments shall be made in US dollars, at CaseStack designated remittance address. All payments must be applied to the Invoices to which they are identified and Customer will assist CaseStack with CaseStack's reasonable efforts to properly allocate payments. No deductions or set offs shall be made by Customer to any Invoices for any reason whatsoever. Customer's failure to pay amounts due under any Invoice in accordance with the provisions herein may result in the imposition of late fees in the amount of 1% of the monthly delinquent balance. In any referral for collection or action against Customer for amounts due to CaseStack, upon recovery by CaseStack, Customer shall pay all expenses of collection and/or litigation, including reasonable attorneys' fees, collection agency fees, and court costs. All payments to CaseStack shall be exclusive of federal, state, local and foreign taxes, duties, tariffs, levies and similar assessments, if any, on the use of the Services hereunder, and Customer agrees to bear and be responsible for the payment of all such charges. In addition, Customer shall solely be responsible for any property taxes imposed on the Goods themselves or any other taxes imposed on the sale of the Goods. If CaseStack advances any such charges, Customer will remit payment of such advanced amounts upon demand.

7.  Loss or Damage to Goods.

7.1. Liability of CaseStack.

7.1.1.    Standard of Care.  CaseStack shall be liable for instances of loss, shortage, damage, and destruction to Goods, including loss, damage or destruction caused by unreasonable delay (each a "Damage Claim"), to the extent any such Damage Claim is directly and proximately caused by CaseStack's failure to exercise that degree of care that a reasonable person would exercise under similar circumstances except to the extent any such liability is otherwise disclaimed or limited below.

7.1.2.    Limitation of Liability.



7.1.2.1. CaseStack's liability with respect to any Damage Claim shall in no event exceed the cost to repair or replace the Goods actually lost, damaged or destroyed.

7.1.2.2. In addition, CaseStack's liability for Damage Claims is limited as follows:

7.1.2.2.1. For Damage Claims arising from FTL Service, $2.50 per pound per package subject to a maximum liability of $100,000 per trailer or conveyance.

7.1.2.2.2. For Damage Claims arising from LTL Service, $.50 per pound per package.

7.1.2.2.3. For Damage Claims arising from Warehouse Service or Cross-Dock Service (including, but not limited to, Damage Claims arising during transfer of Goods between WFCs for the convenience of CaseStack or any Provider), $.20 per pound per package.

7.1.2.2.4. For Damage Claims arising from Parcel Service, $100 per parcel.

7.1.2.2.5. For any other Damage Claim, $1.00 per pound per package subject to a maximum liability of $10,000 per occurrence.

7.1.2.3. Section 7.1.1 notwithstanding:

7.1.2.3.1. in no event will CaseStack bear any responsibility for any Damage Claim arising from or related to temperatures to which Goods are exposed during transportation by Providers except to the extent: (i) CaseStack has agreed in a writing signed by an authorized representative of CaseStack to arrange for controlled temperature transit with respect to the Goods in question; (ii) CaseStack fails to communicate those instructions to the Provider; and (iii) such failure is the direct and proximate cause of the Damage Claim.

7.1.2.3.2. in no event will CaseStack be liable for any chargebacks or other fees, fines, or penalties related to any missed pick-up or delivery appointment, or other related events, with respect to transportation being arranged by CaseStack. CaseStack's sole liability with respect to delay will be to the extent CaseStack's failure to exercise that degree of care that a reasonable person would exercise under similar circumstances results in an unreasonable delay that causes loss or damage to the Goods themselves.

7.1.3. Notification of Concealed Damage and Shortage. In the event of a claim involving concealed loss, shortage or damage not specifically noted on the delivery receipt at the time of delivery of Goods with respect to which CaseStack has arranged for transportation from a CaseStack facility, Customer must notify CaseStack in writing of such loss or damage within three (3) days of the date of delivery or there will be a presumption that such loss or damage occurred subsequent to delivery of the Goods. Reservations noted on the delivery receipt purporting to reserve the right to subsequently count or inspect Goods, or indicating the possible or potential existence of shortage or damage without specifically identifying shortage or damage shall not constitute notice of loss, shortage or damage on the delivery receipt at the time of delivery.

7.2. Physical Inventories, Loss Allowance and Shortage.

7.2.1. Warehouse Services:

7.2.1.1. Physical Inventory. As part of the Warehouse Services, CaseStack shall allow, at a date agreed upon between Customer and CaseStack, for one physical inventory



count of Goods stored in a WFC to be conducted annually, the cost of which will be borne by Customer. If shortages are identified at delivery of Goods moving outbound from a WFC following provision of Warehouse Services, and such Goods are delivered in a sealed trailer with the seal in-tact at the time of delivery, then any shortage identified on the bill of lading at the time of delivery shall be held in abeyance and netted against the inventory count.

7.2.1.2. Loss Allowance. If after such inventory, there are shortages for unaccounted Goods constituting a Damage Claim, CaseStack shall be liable, subject to the Loss Allowance as defined below, in accordance with the limitations set forth in these Conditions for Damage Claims arising during Warehouse Services. If there is an overage identified by such inventory, the inventory count will be adjusted accordingly, and no claims will be filed by either party.

7.2.1.3. Customer agrees to a damage and inventory shrinkage allowance of one-quarter of one percent (.25%) for the total manufacturer cost of the total throughput of Goods with respect to which Warehouse Services have been supplied at each WFC since: (i) with respect to the first inventory performed at each WFC under these Conditions, since the Effective Date of Revised Conditions; and (ii) with respect to all other inventories, since the date of the last inventory at the same WFC(as applicable, the "Loss Allowance").

7.2.2. Cross-Dock Services. With respect to Cross-Dock services, CaseStack's sole responsibility with respect to quantity of Goods is to ensure that the pallet count on inbound and outbound shipments is consistent with the bills of lading or other delivery receipts. In no event will CaseStack have any responsibility for any shortage or missing Goods with respect to Cross-Dock Services as long as pallet counts inbound to and outbound from any facility at which Cross-Dock Services are provided remains consistent.

7.3. Liability of Providers. Customer acknowledges and agrees that liability of Providers for Damage Claims may be limited by Applicable Law, or by terms and conditions of service pursuant to which the Provider agrees to provide Provider Services and that Customer's recovery against Providers with respect to Damage Claims is subject to any such limitations. CaseStack shall have no duty or obligation to arrange for any minimal recovery against any Provider except to the extent Customer has requested Declared Value in accordance with the procedures below.

7.4. Declared Value. Customer may request that CaseStack accept, and arrange for Providers to accept, increased limitations of liability. In the event Customer wishes to increase otherwise applicable limitations on the liability of CaseStack and the Providers with respect to any Goods subject to these Conditions, Customer must make such request to CaseStack in writing at least seventy-two (72) hours prior to the time when the Goods are first scheduled to be tendered to a Provider pursuant to these Conditions. Customer's request must include a sum certain limitation level of liability (the "Declared Value"). If such request is accepted by CaseStack in a signed writing, and Customer pays additional fees assessed by CaseStack with respect thereto, then: (i) CaseStack's liability for any Damage Claim shall capped at the lesser of the cost to repair or replace the Goods in question, or the Declared Value; and (ii) CaseStack shall arrange with the Provider to accept liability with respect to such Goods at the lesser of the cost to repair or replace the Goods in question or the Declared Value.

7.5. Claim Filing Obligations and Assistance.

7.5.1. Claims Against CaseStack. Customer shall not file, and CaseStack shall have no liability for, and Damage Claim where the amount of CaseStack's liability as computed hereunder is less than $50.00. Customer must file a written notice of Damage Claim against CaseStack by the earlier of:

**IHI Hub Group**

7.5.1.1. With respect to FTL or LTL Service, within eight (8) months from the date of delivery, or if no delivery, eight (8) months from the date on which delivery should have occurred.

7.5.1.2. With respect to all other services, within the earlier of thirty (30) days after the Goods are delivered by a Provider to their destination, or thirty (30) days after CaseStack or any Provider engaged by CaseStack notifies Customer of loss, damage or delay to any Goods.

7.5.2.   CaseStack shall have no liability for any Damage Claim with respect to which notice has not been provided in accordance with the foregoing limitations.

7.5.3.   Charges. All past due charges owing to CaseStack pursuant to these Conditions must be paid prior to CaseStack having any obligation to consider such claim.

7.6.   Scheduled Services. CaseStack is only obligated to provide Services on or in compliance with any specific schedule to the extent CaseStack has expressly agreed to do so in these Conditions, and CaseStack's sole liability with respect to comply with any such schedules shall be if such delay results in a Damage Claim.

7.7.   Provisions Binding. The provisions of this Section shall solely govern the rights and obligations of CaseStack, Customer and any other party with an interest in the Goods with respect to any Damage Claim. The sole liability of CaseStack, and the sole rights of Customer or any other party with any interest in the Goods, with respect to any Damage Claim, shall be as set forth in this Section regardless of how any action or claim is styled and regardless of any other rights or claims that might otherwise be available in law or equity.

8.   Insurance. Each Party shall obtain and maintain during the term of these Conditions at least the following insurance coverages:

8.1.   Commercial general liability insurance: with minimum limits of liability of not less than $1,000,000 per occurrence.

8.2.   Workers compensation insurance: in accordance with statutory requirements of jurisdiction where employees are domiciled.

9.   Independent Contractor Status. CaseStack is and will remain an independent contractor with respect to Customer and the Services being provided hereunder. Nothing in these Conditions shall be construed to create a legal partnership or joint venture between the parties.

10. Warehouse Services. The following provisions apply solely to Warehouse Services arranged by CaseStack.

10.1.   Receipts and Tender. Each receipt or tender of Goods at a Warehouse Fulfillment Center (as defined below ("WFC")) will be evidenced by a written receipt in a form agreed to by the parties, signed by CaseStack's Subcontractor and the inbound or outbound carrier, as the case may be, showing the kind and quantity of Goods received by, or tendered to, CaseStack. CaseStack's responsibility for Goods will commence only after CaseStack, its Subcontractors, or its authorized agent has signed a receipt for those Goods. Each signed receipt will evidence CaseStack's acceptance of delivery of the Goods covered by that receipt in apparent good order and condition, unless otherwise noted on the face of the receipt, without any obligation on CaseStack's part to conduct an inspection of the Goods, unless otherwise instructed by Client to do so and upon the understanding that CaseStack will be compensated for any charges incurred in connection with such inspection. CaseStack's Subcontractors shall have up to two (2) hours from the time driver signs in to complete loading and/or unloading of appointed, palletized, or slip-sheeted trailers or containers of Goods, with the exception of spotted (dropped) trailers or containers at the WFC which may take longer than two (2) hours. CaseStack's Subcontractors shall have up to six (6) hours to unload appointed floor loads, or up to one (1) business day (24 hours) for dropped containers. CaseStack shall not be liable for demurrage or detention, delays in unloading inbound cars, trailers or other containers, or delays in obtaining and unloading cars, trailers or other containers for outbound shipment.

8



These Conditions will prevail in all circumstances over any inconsistent provision in a receipt, any bill of lading, any other shipping document, or inconsistent term and/or condition contained in any other document or instrument.

10.2. <u>Tender of Goods</u>. Customer will initially deliver to CaseStack, and from time to time replenish, supplies of Goods in such amounts, as Customer' considers appropriate in accordance with Customer's sales arrangements with its customers, and in such amounts as will enable CaseStack to efficiently and effectively perform the Services hereunder. All such Goods so delivered shall remain the property of Customer' and shall be disposed of in accordance with Customer's instructions. CaseStack or its Subcontractors shall not acquire title to or any interest in any of the Goods, except that CaseStack shall have a general warehouseman's lien to secure payment of all amounts due under these Conditions.

10.3. <u>Proper Marking</u>. Customer agrees that all Goods delivered by Customer and/or tendered for storage shall be shipped for delivery to a WFC properly marked and packaged in a safe, secure and appropriate manner to prevent spillage and damage in the course of shipping and handling, and shall be labeled and packaged in accordance with all applicable laws and regulations. Customer shall furnish to CaseStack, at or prior to delivery, a manifest showing marks, brands and/or sizes to be kept and accounted for separately, and the class of storage and other Services desired.

10.4. <u>No Goods Consigned</u>. The bill of lading and other shipping documents for the Goods shipped to CaseStack or its Subcontractors pursuant to these Conditions shall show Customer as named "consignee," with CaseStack as the "in care of" party. CaseStack shall not be named as shipper, carrier or consignee of any Goods accepted for shipment; or, if so incorrectly named, Customer shall provide a written notification to the carrier (with copy to CaseStack) that CaseStack is a "warehouseman" for purposes of the shipment and has no beneficial title or interest in the Goods. Customer agrees that, if CaseStack is incorrectly named as "shipper," "carrier," and/or "consignee" and Customer fails to notify carrier as provided in this subsection: (a) CaseStack shall have the right to refuse acceptance of such Goods under these Conditions and shall not be liable or responsible for any loss, injury or damage of any nature related to such Goods or their shipment or non-shipment; and (b) Customer agrees to indemnify and hold CaseStack harmless from and against any liability or expense to CaseStack for unpaid transportation charges, including undercharges, demurrage, detention or other charges of any kind, arising from such Goods or their shipment or non-shipment, where CaseStack is incorrectly designated as "shipper," "carrier," and/or "consignee."

10.5. <u>Hazardous Materials and Removal</u>. Customer hereby represents and warrants to CaseStack that it has and will continue to disclose to CaseStack, prior to tendering of any Goods to CaseStack, all potential health, safety and/or environmental hazards that may be associated with transportation, storage or handling of the Goods, including without limitation, any Hazardous Materials. If as a result of a quality condition of Goods of which CaseStack had no notice at the time of acceptance, the Goods are a hazard to the WFC, to other property or other persons, CaseStack may, after providing Customer notice to take back the hazardous Goods, dispose or sell such Goods in the manner and to the fullest extent provided by applicable law without recourse; provided, however, nothing contained in these Conditions shall require CaseStack to sell such Goods.

10.6. <u>Refusal of Goods</u>. CaseStack reserves the right to refuse to accept any Goods tendered by Customer that, in CaseStack's sole discretion, constitute unacceptable or previously undisclosed hazards, or may cause contamination or damage to the WFC or other Goods stored in the WFC. Unless otherwise expressly provided herein, CaseStack may also refuse to accept any Goods which are classified as "Hazardous Materials" except when the hazardous Goods have been approved in writing for acceptance by CaseStack.

10.7. <u>Access to WFCs</u>. CaseStack will use WFCs to perform Services, which require the use of such WFCs. Customer representatives will have access to the WFCs for inventory or inspection purposes during normal business hours upon reasonable advance request to CaseStack. If the Services do not require the use of WFCs, this Section shall not establish any right by Customer to use such WFCs. CaseStack may utilize the WFCs to serve Customers other than the Customer that is a party to these Conditions.



10.8. <u>Handling Services</u>. The Services shall include arrangement by CaseStack for handling of Goods at the WFCs (or other facilities) at which the Goods are stored. The handling services covered by the basic storage and handling charge include, but are not limited to, the ordinary labor involved in receiving Goods at the WFC dock door, placing Goods in storage in the WFC, and returning Goods to the WFC dock door.

10.9. <u>Transfer of Goods at Customer Request</u>. Instructions to transfer Goods on the books of CaseStack are not effective until delivered to and accepted by CaseStack, and all charges up to the time transfer is made are chargeable to Customer. If the transfer involves rehandling of Goods, such rehandling will be invoiced by CaseStack for which Customer will be responsible. When Goods in storage are transferred from one party to another through the issuance of a new warehouse receipt, a new storage date will be established on the date of transfer.

10.10. <u>Transfer of Goods at CaseStack Election</u>. CaseStack reserves the right to move, at its expense, upon 14 days' written notice provided to Customer or the last known holder of a negotiable warehouse receipt ("Holder"), any Goods stored in one WFC to any other WFC. The Uniform Commercial Code Section 7-104 defines a warehouse receipt, bill of lading or other document of title as "negotiable," if by its terms, the goods to be delivered to bearer or to the order of a named person; or where recognized in overseas trade, if it runs to a named person or assigns. Customer or Holder may elect to take delivery of its Goods in lieu of such transfer by written notice to CaseStack prior to the expiration of such 14 day period. CaseStack reserves the right to charge a pro-rated storage fee from the first of the month to the actual date of delivery to Customer or Holder. Notwithstanding the above, CaseStack reserves the right, without notice to Customer or Holder, and at CaseStack's sole expense, to move Goods within and between any one or more of its regional WFC buildings.

10.11. <u>Written Instructions for Outbound Orders</u>. No Goods shall be transported or delivered except upon receipt by CaseStack of complete written instructions. Notwithstanding other notice provisions herein, written instructions for transport and delivery may be; but, are not limited to, FAX, EDI, INTERNET or similar communications, and CaseStack shall have no liability when relying on the information contained in the communication as received.

10.12. <u>Goods Availability for Fulfillment</u>. Goods must be received by the WFC at least one business day before becoming available for order fulfillment.

10.13. <u>Fulfillment and Delivery Outbound Orders</u>. When Goods are ordered out of the WFC, a reasonable time shall be given to CaseStack and its Subcontractors to carry out such instructions. Without limiting the generality of other limitations on liability contained in these Conditions, if CaseStack is unable to carry out instructions because of any act constituting a Force Majeure, seizure under legal process or any other reason beyond CaseStack's control, CaseStack shall not be liable for failure to carry out such instructions, and Goods remaining in storage shall continue to be subject to regular storage and other charges. CaseStack is not liable for any loss, late-delivery or non-delivery caused by the act, default or omission of the carrier, freight service provider, Customer or any other party who claims any interest in the shipment, or caused by the nature of the shipment or any defect thereof. CaseStack is not liable for losses, late-delivery or non-delivery caused by violation(s) by the Customer of any of the terms and conditions contained in the Bill of Lading or of the carrier's Rules Tariff including, but not limited to, improper or insufficient packing, securing, marking or addressing, or failure to observe any of the rules relating to shipments not acceptable for transportation or shipments acceptable only under certain conditions. CaseStack is not liable for losses, late delivery or non-delivery caused by acts constituting a Force Majeure event. CaseStack is not liable for failure to comply with delivery or other instructions from the Customer or for the acts or omissions of any person other than employees of CaseStack.

10.14. <u>Inventory Records</u>. CaseStack shall maintain complete records of Goods received, showing quantities received and shipped, inventory on hand and damaged or lost Goods, plus any other information or records reasonably required by Customer ("Customer Information"). All such Customer Information shall be available to Customer for the earlier of (a) termination or expiration of the Agreement, if any; or (b) a period of up to one (1) year in a form reasonably acceptable to Customer, and CaseStack shall provide such reports on the



foregoing as are reasonably requested by Customer. After expiration of this 1 year period, CaseStack in its sole discretion may delete, discard or destroy such Customer Information, without notice.

10.15. Physical Inventories. CaseStack shall periodically, and at Customer's request, conduct a physical inventory of all Goods. CaseStack shall also perform periodic cycle counting as reasonably requested by Customer. An hourly labor charge will apply for all physical inventory as well as cycle count activities requested by Customer.

10.16. Documents of Title. Documents of title, including warehouse receipts, may be issued either in physical or electronic form at the option of the parties.

10.17. Recall. In the event that a recall, field alert, product withdrawal or field correction (collectively, a "Recall") may be necessary with respect to any Goods provided under these Conditions, Customer shall immediately notify CaseStack in writing. CaseStack will not act to initiate a Recall without the express prior written approval of Customer, unless otherwise required by Applicable Laws. In the event Customer believes a Recall may be necessary with respect to any Goods provided under these Conditions, Customer shall promptly notify CaseStack in writing and CaseStack shall provide reasonable cooperation and assistance to Customer. The cost of any Recall shall be borne by Customer.

11. Consolidation Program Conditions.

11.1. Description. CaseStack may, in its sole discretion from time to time, operate one or more Consolidation Programs whereby CaseStack consolidates multiple outbound LTL Shipments destined to participating retailers into FTL Shipments (each a "Consolidation Program"). Additional rules and pricing specific to each Consolidation Program are set forth in retailer specific schedules to the applicable Agreement, if any. If Customer is not in compliance with all conditions applicable to the Consolidation Program in question, CaseStack shall be under no obligation to ensure that orders are included on FTL Shipments moving under Schedules addressing Consolidation Programs, and shall have no liability arising from or related to exclusion of any shipment from the Consolidation Program.

11.2. Goods to be On-Hand. Goods to be shipped out as part of a Consolidation Program shipment must be received by the WFC on or prior to the applicable Consolidation Program order issuance date. If the inbound Goods arrive after the Consolidation Program order issuance date, CaseStack will have no responsibility to include the Goods in the Consolidation Program shipment. The foregoing notwithstanding, If CaseStack receives the inbound orders after the Consolidation Program order issuance date and CaseStack is able to process the Goods and include them in the Consolidation Program shipment, Customer will be responsible for a Rush Order charge.

11.3. Shipments inbound to Providers. For Customer-routed inbounds, the Customer shall ask the motor carriers to schedule for delivery appointments into the Provider's location in the mornings whenever possible. Inbound delivery appointments shall be scheduled 24-48 hours prior to delivery.

11.4. Cross-Dock Only Customers. If Customer is participating in a Consolidation Program, but is only receiving Cross-Docking Services and not Warehouse Service, the following shall apply and shall govern in the event of a conflict with other provisions of these Conditions addressing Consolidation Programs:

11.4.1. All pallets need to be ready for shipping to the retailer when the Provider unloads the inbound truck. Each shipment must have:

      11.4.1.1. Stretch wrapped pallets.

      11.4.1.2. Individual BOLs that match each outbound shipment from the WFC to the retailer. These outbound BOLs must indicate the PO number, number of cases and pallets, product item # and description, weight, and the consignee information (such as DC # and address). The outbound BOLs must indicate

Hub Group

the freight terms as "3rd Party Billing to CaseStack" at the address provided by CaseStack or otherwise as instructed by CaseStack.

11.4.1.3.   A packing list containing itemization of Goods and quantities shipped.

11.4.1.4.   An 8 ½" x 11" pallet placard indicating the destination DC number, city, state, PO number, and total number of cases on the pallet.

11.4.2. Customer must submit a cross dock manifest, which contains a summary per inbound truck. Each inbound truck's summary should contain: (a) ship from location; (b) ship to location; (c) shipper contact name, telephone number, and email address; and for each retailer purchase order: (d) the retailer consignee's distribution center number, (e) the retailer consignee's city and state; (f) number of pallet(s); (g) retailer's purchase order number; (h) gross weight (including pallet weight); (i) Bill of Lading number; (j) number of pallets per purchase order; and (k) number of cases per purchase order. The cross dock manifest must be submitted on a weekly basis and must be received by a representative of CaseStack's Account Management Team at least one business day (24 hours) prior to the arrival of the first inbound shipment. The cross dock manifest should also provide the total pallet count and total gross weight for each inbound truck. Retailer purchase orders shipping to the same destination cannot be split amongst multiple inbound trucks.

11.4.3. All inbound trucks must arrive at the Provider's by noon local time during normal unloading hours at least one business day prior to the outbound shipping day (except that if Customer's Goods ship from the Northeast region, then outbound shipping orders which ship on Wednesday must by Tuesday at 10:00 PM local time).

12. Warranty and Disclaimer. Certain Services may be temporarily unavailable for scheduled maintenance or for unscheduled emergency maintenance, by CaseStack or by Service Providers, or because of other causes beyond CaseStack's reasonable control. CaseStack shall use reasonable efforts to provide advance notice in writing or by e-mail of any scheduled downtime. THE SERVICES ARE PROVIDED "AS-IS" WITHOUT WARRANTY OF ANY KIND. WITHOUT LIMITING THE FOREGOING, CaseStack DOES NOT WARRANT THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR FREE; NOR DOES IT MAKE ANY WARRANTY AS TO THE RESULTS THAT MAY BE OBTAINED FROM USE OF THE SERVICES OR THAT THE SERVICES WILL MEET CUSTOMER'S REQUIREMENTS. PROVIDER DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ORAL OR WRITTEN, WITH RESPECT TO THE SERVICES INCLUDING WITHOUT LIMITATION ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND ALL WARRANTIES IMPLIED FROM ANY COURSE OF DEALING, COURSE OF PERFORMANCE OR USAGE OF TRADE.

13.   Limitations and Disclaimers. IN NO EVENT SHALL ANY PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF PROFITS, DATA OR USE, INCURRED BY ANY PARTY OR ANY THIRD PARTY, WHETHER IN AN ACTION IN CONTRACT OR TORT, EVEN IF ANY OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE AGGREGATE AND CUMULATIVE LIABILITY OF CASESTACK ARISING FROM OR RELATING TO THESE CONDITIONS, INCLUDING ANY AGREEMENT, SHALL IN NO EVENT EXCEED THE AMOUNTS PAID BY CUSTOMER TO CASESTACK FOR SERVICES RENDERED BY CASESTACK DURING THE TWELVE MONTHS IMMEDIATELY PRECEDING THE DATE ON WHICH CASESTACK PAYS ANY SUCH CLAIM.

14. Confidentiality and Records.

14.1.   Applicability. Each Party (the "Receiving Party") understands that the other Party (the "Disclosing Party") or its representatives has disclosed or may disclose information relating to its finances, business, marketing plans, customers, operations, technology or software. "Proprietary Information" refers to any such information (including all originals, copies, notes, analyses, digests and summaries) which: (a) is disclosed in writing and marked as confidential at the time of disclosure or (b) is disclosed in any manner such that a reasonable person would understand the nature and confidentiality of the information or (c) sets forth information relating to a Party's suppliers, pricing, volumes, traffic lanes, or customers. Proprietary Information shall not



include any information which: (i) is or becomes generally known or available without breach of these Conditions, (ii) was in Receiving Party's possession or known by it prior to receipt from the Disclosing Party, as demonstrated by Receiving Party's data or written information, (iii) was rightfully disclosed to Receiving Party by a third party who, to the best of Receiving Party's knowledge, was not prohibited from so disclosing, or (iv) was independently developed without use of any Proprietary Information of the Disclosing Party.

14.2.  Prohibitions.  Except for the specific rights granted by these Conditions and the Agreement, neither party shall use or disclose to any individual or other third party (other than the Receiving Party's employees or contractors with a need to know) any Proprietary Information of the other party without its written consent. The Receiving Party shall use commercially reasonable degree of care to protect the Proprietary Information which shall mean at least that degree of care to which the Receiving Party subjects its own Proprietary Information. Promptly after requested by the Disclosing Party, the Receiving Party shall return to the Disclosing Party originals and copies of all Proprietary Information and all information, records and materials developed therefrom by the Receiving Party. Each party may only disclose the general nature, but not the specific terms, of the Agreement and these Conditions without the prior consent of the other party; provided, either party may provide a copy of these Conditions and the Agreement (or otherwise disclose its details) in connection with any financing transaction or due diligence inquiry, but only if the recipient agrees to keep these Conditions, the Agreement and its details confidential.

14.3.  Permitted Disclosures.  Nothing herein shall prevent a Receiving Party from disclosing all or part of the other's Proprietary Information: (a) to an affiliate (as such term is defined under the federal securities laws of the United States of America) of the Disclosing Party; (b) as necessary pursuant to the lawful requirement of a governmental agency or when disclosure is required by due legal process; provided, that prior to any such disclosure, it uses reasonable efforts to notify the Disclosing Party in writing of such requirement to disclose; or (c) to the extent disclosure is reasonably necessary for, and contemplated by, the performance of the Services including, but not limited to, disclosures by CaseStack to Providers or disclosure by CaseStack of inventory records to Customer's customers if Customer participates in a Consolidation Program as defined in Section 24.

14.4.  Relief.  Money damages will not be an adequate remedy if this Section is breached and, therefore, the Disclosing Party shall, in addition to any other legal or equitable remedies, be entitled to seek an injunction or similar equitable relief against such breach or threatened breach without the necessity of posting any bond.

14.5.  Access to Records.  CaseStack shall retain such inventory records regarding the services provided to Customer as it deems prudent in its sole discretion.  Such inventory records will be maintained while the Agreement remains in effect and for one (1) year following termination or expiration.  After such time, CaseStack is free to, but not obligated to, destroy such records. To the extent allowable under Applicable Law, Customer hereby waives its right to obtain copies of CaseStack's records as provided for under 49 C.F.R. Part 371.

14.6.  Prior Non-Disclosure Agreement.  If Customer and CaseStack have previously negotiated a separate Non-Disclosure Agreement ("NDA"), any such NDA shall remain in effect and binding in accordance with its own terms and shall not be impacted by this provision.

14.7.  Proprietary Rights.  Except as specifically permitted in these Conditions, Customer shall not, directly or indirectly: (a) use any of CaseStack's Proprietary Information (as defined herein) to create any software or system that is derived in whole or part from the systems used by CaseStack in delivering Services; (b) decompile, disassemble, reverse engineer or use any similar means to attempt to discover the source code of the software or the trade secrets therein, or otherwise circumvent any technological measure that controls access to the CaseStack's software or other systems; (c) encumber, transfer, rent, lease, or time-share such software, systems or Services, or use them in any service bureau arrangement or otherwise for the benefit of any third party; (d) copy (except for archival purposes), distribute, manufacture, adapt, create derivative works of or otherwise modify any software or system; (e) remove any proprietary notices or labels; or (f) permit any third party to engage in any of the acts proscribed in clauses (a) through (e).

**IHI Hub Group**

15. <u>No Implied Licenses</u>. Except for the limited rights expressed hereunder, if any, CaseStack shall retain all right, title and interest in and to any and all hardware and software systems used to deliver the Services, and the Services themselves. Customer shall not take any action inconsistent with such ownership or otherwise use any such systems or services in a manner inconsistent with these Conditions or with CaseStack's rights and interests.

16. <u>Non-Solicitation</u>. During the terms of the Agreement and any extensions thereof, and for a period of twelve (12) months thereafter, neither Party shall directly or indirectly solicit for employment or actually employ, retain, contract or otherwise hire any employees of the other Party involved in the performance, provision, consumption or evaluation of the Services, unless agreed to in writing by the other Party; provided that this prohibition shall not apply to any general solicitation not directed exclusively or primarily to individuals providing services to the other Party. Customer shall refrain from active solicitation or retention of Service Providers to transport or store goods that would otherwise fall within the scope of the Agreement during the term hereof or for a period of six months after termination, cancellation or expiration of the Agreement.

17. <u>Attorney's Fees</u>. In any action at law or in equity that is brought to enforce or interpret the provisions of these Conditions including any Agreement, the prevailing party in such action shall be entitled to reimbursement for all reasonable attorney's fees and costs incurred in connection therewith.

18. <u>Waiver</u>. The waiver by either Party of any default or breach of these Conditions, including any Agreement, shall not constitute or waiver of any other or subsequent default or breach. Except for actions for breach of confidentiality and non-payment of amounts owed hereunder, no action, regardless of form, arising out of the Agreement may be brought by either Party more than one (1) year after the cause of action has accrued.

19. <u>Force Majeure</u>. In the event performance by one Party is affected by any cause beyond the reasonable control of such Party, including without limitation, fire, labor strife, riot, war, weather conditions, acts of the public enemy, acts of God, acts of terrorism, local or national disruptions to transportation networks or operations, fuel shortages, governmental regulations, or governmental request or requisition for national defense, and provided that the applicable cause is not attributable to the acts or omissions of such Party, and such Party is taking reasonable measures to remove or mitigate the effects of the applicable cause, then the performance of all obligations required herein shall, with the exception of payment of invoices, be suspended during the continuance of such interruption, and such Party shall promptly notify the other Party of such interruption. Such period of suspension shall not in any way invalidate these Conditions, but on resumption of operations, any affected performance by such Party shall be resumed. No liability shall be incurred by either Party for damages resulting from such suspensions.

20. <u>Successors and Assigns; Assignment</u>. The Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither the Agreement nor any rights granted hereunder may be sold, leased, assigned or otherwise transferred, in whole or in part, by either Party, and any such attempted assignment shall be void and of no effect without the prior written consent of the other Party, such consent not to be unreasonably withheld or delayed; provided, however, that such consent shall not be required if (i) either Party assigns the Agreement to an affiliate (as such term is defined under the federal securities laws of the United States of America), or (ii) CaseStack assigns its right to receive and collect payments hereunder.

21. <u>Subcontracting</u>. CaseStack may utilize one or more subcontractors to perform portions of the Services.

22. <u>Governing Law; Venue</u>. These Conditions and the entire relationship of the parties shall be construed and governed according to the laws of the state of California without giving consideration to principles of conflict of laws. If litigation arising from or related to the Agreement or the relationship of the Parties is commenced, the parties irrevocably consent to the exclusive jurisdiction and venue of the state and federal courts of appropriate jurisdiction serving in Los Angeles County, California.

23. <u>Dispute Resolution</u>. The Parties shall attempt in good faith to resolve any dispute arising out of or relating to these Conditions promptly by negotiation between executives who have authority to settle the controversy and who are at a higher level of management than the persons with direct responsibility for administration of this



contract. Any Party may give the other Party written notice of any dispute not resolved in the normal course of business. Within fifteen (15) days of delivery of the notice, the receiving Party shall submit to the other a written response. The notice and the response shall include a statement of each Party's position and a summary of arguments supporting that position and the name and title of the executive who will represent that Party and any other person who will accompany that executive. Within thirty (30) days after delivery of the disputing Party's notice, the executives of both Parties shall meet at a mutually-acceptable time and place and, thereafter, as often as they deem reasonably necessary to attempt to resolve the dispute. All negotiations pursuant to this Section are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

24. <u>Consolidation Programs</u>. CaseStack may, in its sole discretion from time to time, operate one or more Consolidation Programs whereby CaseStack consolidates multiple outbound LTL Shipments destined to participating retailers into FTL Shipments (each a "Consolidation Program"). Additional rules and pricing specific to each Consolidation Program are set forth in the Conditions as well as in the Schedules. Each such schedule will be specific to the retailer identified therein, and each of which may be revised by CaseStack in its sole discretion from time to time, which revised schedule shall take effect (and supersede the then-current schedule) on the date set forth therein. If Customer is not in compliance with all conditions applicable to the Consolidation Program in question, CaseStack shall be under no obligation to ensure that orders are included on FTL Shipments moving under Schedules addressing Consolidation Programs, and shall have no liability arising from or related to exclusion of any shipment from the Consolidation Program.

25. <u>Estimated Transit Time</u>. Estimated Transit Time is an approximation and does not include pickup day, weekends, or holidays. Shipments which require notification before delivery or a delivery appointment will require extra transit days in addition to the Estimated Transit Time. Requested Pickup Dates and Requested Delivery Dates are not guaranteed.

26. <u>Copyright and Trademark Notice</u>. This website is owned and operated by CaseStack. Unless otherwise specified, all materials appearing on this website, including the text, website design, logos, graphics, icons, and images, as well as the selection, assembly and arrangement thereof, are the sole property of CaseStack, Copyright © 2010, ALL RIGHTS RESERVED. All audio and video clips are the sole property of CaseStack or their respective content providers. All software used on the website is the sole property of CaseStack or those supplying the software. You may use the content of this website for transportation and fulfillment purposes only. No materials from this website may be copied, reproduced, modified, republished, uploaded, posted, transmitted, or distributed in any form or by any means without CaseStack's prior written permission. All rights not expressly granted herein are reserved. Any unauthorized use of the materials appearing on this website may violate copyright, trademark, and other applicable laws and could result in criminal or civil penalties.

27. <u>Links to Third-Party Sites and Third-Party Content</u>. CaseStack's website may contain links to third-party websites not under the control or operation of CaseStack. CaseStack provides links only as a convenience and does not endorse and is not responsible for the contents of any linked website or any link contained in a linked website. Because CaseStack's privacy policy is applicable only when you are on its website, once linked to another website, you should read that website's privacy policy before disclosing any personal information. CaseStack's website may contain news and information published by various third-party providers. These third-parties have their own Terms of Service. CaseStack is in no way responsible for the content of any website owned by a third-party that may be linked to CaseStack's Site via hyperlink or other connections, whether such hyperlink or connection is provided by CaseStack or by a third-party. No judgment or warranty is made with respect to the accuracy, timeliness, or suitability of the content of any website to which CaseStack may link, including information on the website regarding CaseStack, and CaseStack takes no responsibility thereof. By providing access to other websites, CaseStack is not endorsing services provided by any website's sponsoring organization. Likewise, CaseStack is not responsible for content that appears concerning CaseStack that may be provided by a third-party.

2023LA000001

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 20864247
2023LA000001
FILEDATE: 1/3/2023 8:37 AM
Date Submitted: 1/3/2023 8:37 AM
Date Accepted: 1/3/2023 10:20 AM
LG

# Exhibit B

DuPage #21248 clk

| Customer | Invoice # | Invoice Date | Due Date | Balance | Aged Past Net Terms N30 |
|---|---|---|---|---|---|
| Unapplied Cash | | | | -45,716.47 | |
| The Korex Corpor: | 0009864819-IN | 5/2/2022 | 6/1/2022 | 1,626.79 | 210 |
| | 0009864820-IN | 5/2/2022 | 6/1/2022 | 6,993.90 | 210 |
| | 0009864821-IN | 5/2/2022 | 6/1/2022 | 2,902.91 | 210 |
| | 0009864822-IN | 5/2/2022 | 6/1/2022 | 16.25 | 210 |
| | 0009864823-IN | 5/2/2022 | 6/1/2022 | 387.09 | 210 |
| | 0009864824-IN | 5/2/2022 | 6/1/2022 | 725.72 | 210 |
| | 0009864825-IN | 5/2/2022 | 6/1/2022 | 4,409.15 | 210 |
| | 0009864826-IN | 5/2/2022 | 6/1/2022 | 50.46 | 210 |
| | 0009864827-IN | 5/2/2022 | 6/1/2022 | 220.36 | 210 |
| | 0009864828-IN | 5/2/2022 | 6/1/2022 | 337.18 | 210 |
| | 0009864829-IN | 5/2/2022 | 6/1/2022 | 6,027.99 | 210 |
| | 0009864830-IN | 5/2/2022 | 6/1/2022 | 447.85 | 210 |
| | 0009864831-IN | 5/2/2022 | 6/1/2022 | 65.24 | 210 |
| | 0009864832-IN | 5/2/2022 | 6/1/2022 | 253.87 | 210 |
| | 0009864833-IN | 5/2/2022 | 6/1/2022 | 16.30 | 210 |
| | 0009864834-IN | 5/2/2022 | 6/1/2022 | 127.40 | 210 |
| | 0009864835-IN | 5/2/2022 | 6/1/2022 | 1,318.79 | 210 |
| | 0009864836-IN | 5/2/2022 | 6/1/2022 | 1,482.57 | 210 |
| | 0009864837-IN | 5/2/2022 | 6/1/2022 | 1,201.49 | 210 |
| | 0009864838-IN | 5/2/2022 | 6/1/2022 | 2,714.33 | 210 |
| | 0009864839-IN | 5/2/2022 | 6/1/2022 | 1,972.17 | 210 |
| | 0009864840-IN | 5/2/2022 | 6/1/2022 | 533.55 | 210 |
| | 0009864841-IN | 5/2/2022 | 6/1/2022 | 782.10 | 210 |
| | 0009864842-IN | 5/2/2022 | 6/1/2022 | 16.90 | 210 |
| | 0009864843-IN | 5/2/2022 | 6/1/2022 | 103.15 | 210 |
| | 0009864844-IN | 5/2/2022 | 6/1/2022 | 19.59 | 210 |
| | 0009864845-IN | 5/2/2022 | 6/1/2022 | 2,143.83 | 210 |
| | 0009864846-IN | 5/2/2022 | 6/1/2022 | 18.29 | 210 |
| | 0009864847-IN | 5/2/2022 | 6/1/2022 | 2,069.02 | 210 |
| | 0009864848-IN | 5/2/2022 | 6/1/2022 | 775.05 | 210 |
| | 0009864849-IN | 5/2/2022 | 6/1/2022 | 2,300.81 | 210 |
| | 0009864850-IN | 5/2/2022 | 6/1/2022 | 646.49 | 210 |
| | 0009864851-IN | 5/2/2022 | 6/1/2022 | 1,695.81 | 210 |
| | 0009864852-IN | 5/2/2022 | 6/1/2022 | 987.14 | 210 |
| | 0009864853-IN | 5/2/2022 | 6/1/2022 | 3,401.43 | 210 |
| | 0009864854-IN | 5/2/2022 | 6/1/2022 | 2,181.52 | 210 |
| | 0009864855-IN | 5/2/2022 | 6/1/2022 | 346.10 | 210 |
| | 0009864856-IN | 5/2/2022 | 6/1/2022 | 52.52 | 210 |
| | 0009864857-IN | 5/2/2022 | 6/1/2022 | 63.38 | 210 |
| | 0009864858-IN | 5/2/2022 | 6/1/2022 | 2,236.79 | 210 |
| | 0009864859-IN | 5/2/2022 | 6/1/2022 | 1,091.98 | 210 |
| | 0009864860-IN | 5/2/2022 | 6/1/2022 | 2,247.22 | 210 |
| | 0009864861-IN | 5/2/2022 | 6/1/2022 | 2,189.39 | 210 |
| | 0009864862-IN | 5/2/2022 | 6/1/2022 | 3,029.96 | 210 |
| | 0009864863-IN | 5/2/2022 | 6/1/2022 | 512.80 | 210 |
| | 0009864864-IN | 5/2/2022 | 6/1/2022 | 20.96 | 210 |
| | 0009864865-IN | 5/2/2022 | 6/1/2022 | 51.04 | 210 |
| | 0009864866-IN | 5/2/2022 | 6/1/2022 | 30.69 | 210 |

| | | | | |
|---|---|---|---|---|
| 0009864867-IN | 5/2/2022 | 6/1/2022 | 16.30 | 210 |
| 0009864868-IN | 5/2/2022 | 6/1/2022 | 961.33 | 210 |
| 0009864869-IN | 5/2/2022 | 6/1/2022 | 1,295.35 | 210 |
| 0009864870-IN | 5/2/2022 | 6/1/2022 | 486.89 | 210 |
| 0009864871-IN | 5/2/2022 | 6/1/2022 | 1,176.26 | 210 |
| 0009864872-IN | 5/2/2022 | 6/1/2022 | 979.18 | 210 |
| 0009864873-IN | 5/2/2022 | 6/1/2022 | 743.37 | 210 |
| 0009864874-IN | 5/2/2022 | 6/1/2022 | 16.30 | 210 |
| 0009864875-IN | 5/2/2022 | 6/1/2022 | 16.30 | 210 |
| 0009864876-IN | 5/2/2022 | 6/1/2022 | 1,189.75 | 210 |
| 0009864877-IN | 5/2/2022 | 6/1/2022 | 784.56 | 210 |
| 0009864878-IN | 5/2/2022 | 6/1/2022 | 16.30 | 210 |
| 0009864879-IN | 5/2/2022 | 6/1/2022 | 41.38 | 210 |
| 0009864880-IN | 5/2/2022 | 6/1/2022 | 1,969.87 | 210 |
| 0009864881-IN | 5/2/2022 | 6/1/2022 | 1,168.11 | 210 |
| 0009864882-IN | 5/2/2022 | 6/1/2022 | 785.16 | 210 |
| 0009884751-IN | 5/8/2022 | 6/7/2022 | 4,587.46 | 204 |
| 0009884752-IN | 5/8/2022 | 6/7/2022 | 2,572.48 | 204 |
| 0009884753-IN | 5/8/2022 | 6/7/2022 | 6,397.33 | 204 |
| 0009884754-IN | 5/8/2022 | 6/7/2022 | 4,940.44 | 204 |
| 0009886658-IN | 5/9/2022 | 6/8/2022 | 1,482.21 | 203 |
| 0009886659-IN | 5/9/2022 | 6/8/2022 | 4,486.04 | 203 |
| 0009886660-IN | 5/9/2022 | 6/8/2022 | 2,535.79 | 203 |
| 0009886661-IN | 5/9/2022 | 6/8/2022 | 4,474.30 | 203 |
| 0009886662-IN | 5/9/2022 | 6/8/2022 | 1,037.61 | 203 |
| 0009886663-IN | 5/9/2022 | 6/8/2022 | 4,338.81 | 203 |
| 0009886664-IN | 5/9/2022 | 6/8/2022 | 3,764.16 | 203 |
| 0009886665-IN | 5/9/2022 | 6/8/2022 | 31.93 | 203 |
| 0009886666-IN | 5/9/2022 | 6/8/2022 | 49.81 | 203 |
| 0009886667-IN | 5/9/2022 | 6/8/2022 | 36.06 | 203 |
| 0009886668-IN | 5/9/2022 | 6/8/2022 | 16.30 | 203 |
| 0009886669-IN | 5/9/2022 | 6/8/2022 | 59.13 | 203 |
| 0009886670-IN | 5/9/2022 | 6/8/2022 | 79.06 | 203 |
| 0009886671-IN | 5/9/2022 | 6/8/2022 | 137.81 | 203 |
| 0009886672-IN | 5/9/2022 | 6/8/2022 | 1,519.19 | 203 |
| 0009886673-IN | 5/9/2022 | 6/8/2022 | 63.85 | 203 |
| 0009886674-IN | 5/9/2022 | 6/8/2022 | 16.99 | 203 |
| 0009886675-IN | 5/9/2022 | 6/8/2022 | 2,662.29 | 203 |
| 0009886676-IN | 5/9/2022 | 6/8/2022 | 20.99 | 203 |
| 0009886677-IN | 5/9/2022 | 6/8/2022 | 2,193.75 | 203 |
| 0009886678-IN | 5/9/2022 | 6/8/2022 | 2,473.11 | 203 |
| 0009886679-IN | 5/9/2022 | 6/8/2022 | 567.41 | 203 |
| 0009886680-IN | 5/9/2022 | 6/8/2022 | 105.19 | 203 |
| 0009886681-IN | 5/9/2022 | 6/8/2022 | 204.95 | 203 |
| 0009886682-IN | 5/9/2022 | 6/8/2022 | 16.30 | 203 |
| 0009886683-IN | 5/9/2022 | 6/8/2022 | 2,332.24 | 203 |
| 0009886684-IN | 5/9/2022 | 6/8/2022 | 2,416.71 | 203 |
| 0009886685-IN | 5/9/2022 | 6/8/2022 | 5,446.91 | 203 |
| 0009886686-IN | 5/9/2022 | 6/8/2022 | 4,162.32 | 203 |
| 0009886687-IN | 5/9/2022 | 6/8/2022 | 1,220.76 | 203 |

| | | | | |
|---|---|---|---|---|
| 0009886688-IN | 5/9/2022 | 6/8/2022 | 1,913.99 | 203 |
| 0009886689-IN | 5/9/2022 | 6/8/2022 | 1,396.54 | 203 |
| 0009886690-IN | 5/9/2022 | 6/8/2022 | 1,175.82 | 203 |
| 0009886691-IN | 5/9/2022 | 6/8/2022 | 3,535.34 | 203 |
| 0009886692-IN | 5/9/2022 | 6/8/2022 | 3,678.13 | 203 |
| 0009886693-IN | 5/9/2022 | 6/8/2022 | 16.70 | 203 |
| 0009886694-IN | 5/9/2022 | 6/8/2022 | 23.31 | 203 |
| 0009886695-IN | 5/9/2022 | 6/8/2022 | 164.36 | 203 |
| 0009886696-IN | 5/9/2022 | 6/8/2022 | 116.19 | 203 |
| 0009886697-IN | 5/9/2022 | 6/8/2022 | 36.98 | 203 |
| 0009886698-IN | 5/9/2022 | 6/8/2022 | 48.15 | 203 |
| 0009886699-IN | 5/9/2022 | 6/8/2022 | 2,952.49 | 203 |
| 0009886700-IN | 5/9/2022 | 6/8/2022 | 212.51 | 203 |
| 0009886701-IN | 5/9/2022 | 6/8/2022 | 2,014.52 | 203 |
| 0009886702-IN | 5/9/2022 | 6/8/2022 | 111.21 | 203 |
| 0009886703-IN | 5/9/2022 | 6/8/2022 | 34.03 | 203 |
| 0009886704-IN | 5/9/2022 | 6/8/2022 | 36.07 | 203 |
| 0009886705-IN | 5/9/2022 | 6/8/2022 | 69.88 | 203 |
| 0009886706-IN | 5/9/2022 | 6/8/2022 | 117.68 | 203 |
| 0009886707-IN | 5/9/2022 | 6/8/2022 | 152.40 | 203 |
| 0009886708-IN | 5/9/2022 | 6/8/2022 | 56.14 | 203 |
| 0009886709-IN | 5/9/2022 | 6/8/2022 | 57.56 | 203 |
| 0009886710-IN | 5/9/2022 | 6/8/2022 | 33.50 | 203 |
| 0009886711-IN | 5/9/2022 | 6/8/2022 | 1,221.97 | 203 |
| 0009886712-IN | 5/9/2022 | 6/8/2022 | 1,136.27 | 203 |
| 0009886713-IN | 5/9/2022 | 6/8/2022 | 2,736.69 | 203 |
| 0009886714-IN | 5/9/2022 | 6/8/2022 | 2,152.51 | 203 |
| 0009886715-IN | 5/9/2022 | 6/8/2022 | 3,715.58 | 203 |
| 0009886716-IN | 5/9/2022 | 6/8/2022 | 4,059.91 | 203 |
| 0009886717-IN | 5/9/2022 | 6/8/2022 | 2,132.53 | 203 |
| 0009886718-IN | 5/9/2022 | 6/8/2022 | 4,315.08 | 203 |
| 0009886719-IN | 5/9/2022 | 6/8/2022 | 3,599.40 | 203 |
| 0009886720-IN | 5/9/2022 | 6/8/2022 | 2,045.51 | 203 |
| 0009886721-IN | 5/9/2022 | 6/8/2022 | 20.57 | 203 |
| 0009886722-IN | 5/9/2022 | 6/8/2022 | 2,247.44 | 203 |
| 0009886723-IN | 5/9/2022 | 6/8/2022 | 2,727.45 | 203 |
| 0009886724-IN | 5/9/2022 | 6/8/2022 | 1,386.14 | 203 |
| 0009886725-IN | 5/9/2022 | 6/8/2022 | 3,255.14 | 203 |
| 0009886726-IN | 5/9/2022 | 6/8/2022 | 68.44 | 203 |
| 0009886727-IN | 5/9/2022 | 6/8/2022 | 74.55 | 203 |
| 0009886728-IN | 5/9/2022 | 6/8/2022 | 1,576.59 | 203 |
| 0009886729-IN | 5/9/2022 | 6/8/2022 | 1,599.93 | 203 |
| 0009886730-IN | 5/9/2022 | 6/8/2022 | 1,782.39 | 203 |
| 0009886731-IN | 5/9/2022 | 6/8/2022 | 44.13 | 203 |
| 0009886732-IN | 5/9/2022 | 6/8/2022 | 140.70 | 203 |
| 0009886733-IN | 5/9/2022 | 6/8/2022 | 61.44 | 203 |
| 0009886734-IN | 5/9/2022 | 6/8/2022 | 1,495.25 | 203 |
| 0009886735-IN | 5/9/2022 | 6/8/2022 | 1,454.79 | 203 |
| 0009886736-IN | 5/9/2022 | 6/8/2022 | 47.04 | 203 |
| 0009886737-IN | 5/9/2022 | 6/8/2022 | 1,530.10 | 203 |

| | | | | |
|---|---|---|---|---|
| 0009886738-IN | 5/9/2022 | 6/8/2022 | 1,556.52 | 203 |
| 0009886739-IN | 5/9/2022 | 6/8/2022 | 56.86 | 203 |
| 0009886740-IN | 5/9/2022 | 6/8/2022 | 86.11 | 203 |
| 0009886741-IN | 5/9/2022 | 6/8/2022 | 2,308.22 | 203 |
| 0009886742-IN | 5/9/2022 | 6/8/2022 | 3,386.98 | 203 |
| 0009886743-IN | 5/9/2022 | 6/8/2022 | 813.28 | 203 |
| 0009886744-IN | 5/9/2022 | 6/8/2022 | 51.03 | 203 |
| 0009886745-IN | 5/9/2022 | 6/8/2022 | 1,777.88 | 203 |
| 0009886746-IN | 5/9/2022 | 6/8/2022 | 68.77 | 203 |
| 0009886747-IN | 5/9/2022 | 6/8/2022 | 81.98 | 203 |
| 0009886748-IN | 5/9/2022 | 6/8/2022 | 33.91 | 203 |
| 0009886749-IN | 5/9/2022 | 6/8/2022 | 34.28 | 203 |
| 0009886750-IN | 5/9/2022 | 6/8/2022 | 3,811.89 | 203 |
| 0009886751-IN | 5/9/2022 | 6/8/2022 | 1,771.21 | 203 |
| 0009886752-IN | 5/9/2022 | 6/8/2022 | 3,474.36 | 203 |
| 0009886753-IN | 5/9/2022 | 6/8/2022 | 118.71 | 203 |
| 0009902564-IN | 5/15/2022 | 6/14/2022 | 5,560.00 | 197 |
| 0009904406-IN | 5/16/2022 | 6/15/2022 | 48.55 | 196 |
| 0009904407-IN | 5/16/2022 | 6/15/2022 | 1,997.50 | 196 |
| 0009904408-IN | 5/16/2022 | 6/15/2022 | 214.55 | 196 |
| 0009904409-IN | 5/16/2022 | 6/15/2022 | 115.43 | 196 |
| 0009904410-IN | 5/16/2022 | 6/15/2022 | 52.30 | 196 |
| 0009904411-IN | 5/16/2022 | 6/15/2022 | 618.51 | 196 |
| 0009904412-IN | 5/16/2022 | 6/15/2022 | 3,405.30 | 196 |
| 0009904413-IN | 5/16/2022 | 6/15/2022 | 72.06 | 196 |
| 0009904414-IN | 5/16/2022 | 6/15/2022 | 6,099.31 | 196 |
| 0009904415-IN | 5/16/2022 | 6/15/2022 | 2,507.90 | 196 |
| 0009904416-IN | 5/16/2022 | 6/15/2022 | 774.65 | 196 |
| 0009904417-IN | 5/16/2022 | 6/15/2022 | 6,242.95 | 196 |
| 0009904418-IN | 5/16/2022 | 6/15/2022 | 653.38 | 196 |
| 0009904419-IN | 5/16/2022 | 6/15/2022 | 34.59 | 196 |
| 0009904420-IN | 5/16/2022 | 6/15/2022 | 265.59 | 196 |
| 0009904421-IN | 5/16/2022 | 6/15/2022 | 2,066.77 | 196 |
| 0009904422-IN | 5/16/2022 | 6/15/2022 | 1,038.52 | 196 |
| 0009904423-IN | 5/16/2022 | 6/15/2022 | 16.82 | 196 |
| 0009904424-IN | 5/16/2022 | 6/15/2022 | 23.44 | 196 |
| 0009904425-IN | 5/16/2022 | 6/15/2022 | 689.93 | 196 |
| 0009904426-IN | 5/16/2022 | 6/15/2022 | 3,600.22 | 196 |
| 0009904427-IN | 5/16/2022 | 6/15/2022 | 1,430.71 | 196 |
| 0009904428-IN | 5/16/2022 | 6/15/2022 | 58.06 | 196 |
| 0009904429-IN | 5/16/2022 | 6/15/2022 | 4,980.50 | 196 |
| 0009904430-IN | 5/16/2022 | 6/15/2022 | 2,621.87 | 196 |
| 0009904431-IN | 5/16/2022 | 6/15/2022 | 5,087.04 | 196 |
| 0009904432-IN | 5/16/2022 | 6/15/2022 | 88.56 | 196 |
| 0009904433-IN | 5/16/2022 | 6/15/2022 | 2,601.72 | 196 |
| 0009904434-IN | 5/16/2022 | 6/15/2022 | 2,186.70 | 196 |
| 0009904435-IN | 5/16/2022 | 6/15/2022 | 86.41 | 196 |
| 0009904436-IN | 5/16/2022 | 6/15/2022 | 33.73 | 196 |
| 0009904437-IN | 5/16/2022 | 6/15/2022 | 879.97 | 196 |
| 0009904438-IN | 5/16/2022 | 6/15/2022 | 1,923.70 | 196 |

| | | | | |
|---|---|---|---|---|
| 0009904439-IN | 5/16/2022 | 6/15/2022 | 60.31 | 196 |
| 0009904440-IN | 5/16/2022 | 6/15/2022 | 20.02 | 196 |
| 0009904441-IN | 5/16/2022 | 6/15/2022 | 109.59 | 196 |
| 0009904442-IN | 5/16/2022 | 6/15/2022 | 1,161.62 | 196 |
| 0009904443-IN | 5/16/2022 | 6/15/2022 | 48.90 | 196 |
| 0009904444-IN | 5/16/2022 | 6/15/2022 | 2,976.20 | 196 |
| 0009904445-IN | 5/16/2022 | 6/15/2022 | 5,080.59 | 196 |
| 0009904446-IN | 5/16/2022 | 6/15/2022 | 1,651.69 | 196 |
| 0009904447-IN | 5/16/2022 | 6/15/2022 | 1,908.89 | 196 |
| 0009904448-IN | 5/16/2022 | 6/15/2022 | 107.76 | 196 |
| 0009904449-IN | 5/16/2022 | 6/15/2022 | 75.05 | 196 |
| 0009904450-IN | 5/16/2022 | 6/15/2022 | 18.61 | 196 |
| 0009904451-IN | 5/16/2022 | 6/15/2022 | 3,412.01 | 196 |
| 0009904452-IN | 5/16/2022 | 6/15/2022 | 51.48 | 196 |
| 0009904453-IN | 5/16/2022 | 6/15/2022 | 22.74 | 196 |
| 0009904454-IN | 5/16/2022 | 6/15/2022 | 3,183.36 | 196 |
| 0009904455-IN | 5/16/2022 | 6/15/2022 | 2,437.63 | 196 |
| 0009904456-IN | 5/16/2022 | 6/15/2022 | 59.06 | 196 |
| 0009904457-IN | 5/16/2022 | 6/15/2022 | 1,375.79 | 196 |
| 0009904458-IN | 5/16/2022 | 6/15/2022 | 62.61 | 196 |
| 0009904459-IN | 5/16/2022 | 6/15/2022 | 2,604.64 | 196 |
| 0009904460-IN | 5/16/2022 | 6/15/2022 | 46.02 | 196 |
| 0009904461-IN | 5/16/2022 | 6/15/2022 | 94.02 | 196 |
| 0009904462-IN | 5/16/2022 | 6/15/2022 | 2,420.96 | 196 |
| 0009904463-IN | 5/16/2022 | 6/15/2022 | 1,498.91 | 196 |
| 0009904464-IN | 5/16/2022 | 6/15/2022 | 37.29 | 196 |
| 0009904465-IN | 5/16/2022 | 6/15/2022 | 1,347.96 | 196 |
| 0009904466-IN | 5/16/2022 | 6/15/2022 | 44.78 | 196 |
| 0009904467-IN | 5/16/2022 | 6/15/2022 | 1,273.19 | 196 |
| 0009904468-IN | 5/16/2022 | 6/15/2022 | 1,494.48 | 196 |
| 0009904469-IN | 5/16/2022 | 6/15/2022 | 16.82 | 196 |
| 0009904470-IN | 5/16/2022 | 6/15/2022 | 3,855.68 | 196 |
| 0009904471-IN | 5/16/2022 | 6/15/2022 | 44.46 | 196 |
| 0009904472-IN | 5/16/2022 | 6/15/2022 | 48.69 | 196 |
| 0009904473-IN | 5/16/2022 | 6/15/2022 | 675.87 | 196 |
| 0009904474-IN | 5/16/2022 | 6/15/2022 | 25.56 | 196 |
| 0009904475-IN | 5/16/2022 | 6/15/2022 | 4,991.93 | 196 |
| 0009904476-IN | 5/16/2022 | 6/15/2022 | 5,251.89 | 196 |
| 0009904477-IN | 5/16/2022 | 6/15/2022 | 87.17 | 196 |
| 0009904478-IN | 5/16/2022 | 6/15/2022 | 3,254.10 | 196 |
| 0009904479-IN | 5/16/2022 | 6/15/2022 | 2,745.34 | 196 |
| 0009904480-IN | 5/16/2022 | 6/15/2022 | 1,940.52 | 196 |
| 0009904481-IN | 5/16/2022 | 6/15/2022 | 3,457.03 | 196 |
| 0009904482-IN | 5/16/2022 | 6/15/2022 | 94.02 | 196 |
| 0009904483-IN | 5/16/2022 | 6/15/2022 | 140.64 | 196 |
| 0009904484-IN | 5/16/2022 | 6/15/2022 | 62.67 | 196 |
| 0009904485-IN | 5/16/2022 | 6/15/2022 | 118.34 | 196 |
| 0009941776-IN | 5/31/2022 | 6/30/2022 | 421.19 | 181 |
| 0009941777-IN | 5/31/2022 | 6/30/2022 | 88.54 | 181 |
| 0009941778-IN | 5/31/2022 | 6/30/2022 | 41.80 | 181 |

| | | | | |
|---|---|---|---|---|
| 0009941779-IN | 5/31/2022 | 6/30/2022 | 57.83 | 181 |
| 0009941780-IN | 5/31/2022 | 6/30/2022 | 16.82 | 181 |
| 0009941781-IN | 5/31/2022 | 6/30/2022 | 3,306.89 | 181 |
| 0009941782-IN | 5/31/2022 | 6/30/2022 | 17.05 | 181 |
| 0009941783-IN | 5/31/2022 | 6/30/2022 | 30.62 | 181 |
| 0009941784-IN | 5/31/2022 | 6/30/2022 | 3,124.63 | 181 |
| 0009941785-IN | 5/31/2022 | 6/30/2022 | 5,261.74 | 181 |
| 0009941786-IN | 5/31/2022 | 6/30/2022 | 4,484.58 | 181 |
| 0009941787-IN | 5/31/2022 | 6/30/2022 | 1,647.84 | 181 |
| 0009941788-IN | 5/31/2022 | 6/30/2022 | 547.17 | 181 |
| 0009941789-IN | 5/31/2022 | 6/30/2022 | 1,417.15 | 181 |
| 0009941790-IN | 5/31/2022 | 6/30/2022 | 144.64 | 181 |
| 0009941791-IN | 5/31/2022 | 6/30/2022 | 189.39 | 181 |
| 0009941792-IN | 5/31/2022 | 6/30/2022 | 984.18 | 181 |
| 0009941793-IN | 5/31/2022 | 6/30/2022 | 35.09 | 181 |
| 0009941794-IN | 5/31/2022 | 6/30/2022 | 20.49 | 181 |
| 0009941795-IN | 5/31/2022 | 6/30/2022 | 1,903.68 | 181 |
| 0009941796-IN | 5/31/2022 | 6/30/2022 | 453.66 | 181 |
| 0009941797-IN | 5/31/2022 | 6/30/2022 | 1,506.02 | 181 |
| 0009941798-IN | 5/31/2022 | 6/30/2022 | 1,935.14 | 181 |
| 0009941799-IN | 5/31/2022 | 6/30/2022 | 811.31 | 181 |
| 0009941800-IN | 5/31/2022 | 6/30/2022 | 36.71 | 181 |
| 0009941801-IN | 5/31/2022 | 6/30/2022 | 1,766.59 | 181 |
| 0009941802-IN | 5/31/2022 | 6/30/2022 | 22.80 | 181 |
| 0009941803-IN | 5/31/2022 | 6/30/2022 | 16.76 | 181 |
| 0009941804-IN | 5/31/2022 | 6/30/2022 | 1,322.66 | 181 |
| 0009941805-IN | 5/31/2022 | 6/30/2022 | 45.28 | 181 |
| 0009941806-IN | 5/31/2022 | 6/30/2022 | 16.76 | 181 |
| 0009941807-IN | 5/31/2022 | 6/30/2022 | 35.13 | 181 |
| 0009941808-IN | 5/31/2022 | 6/30/2022 | 70.38 | 181 |
| 0009941809-IN | 5/31/2022 | 6/30/2022 | 592.34 | 181 |
| 0009941810-IN | 5/31/2022 | 6/30/2022 | 16.76 | 181 |
| 0009941811-IN | 5/31/2022 | 6/30/2022 | 1,230.43 | 181 |
| 0009941812-IN | 5/31/2022 | 6/30/2022 | 4,419.16 | 181 |
| 0009941813-IN | 5/31/2022 | 6/30/2022 | 1,035.34 | 181 |
| 0009941814-IN | 5/31/2022 | 6/30/2022 | 34.71 | 181 |
| 0009941815-IN | 5/31/2022 | 6/30/2022 | 61.14 | 181 |
| 0009941816-IN | 5/31/2022 | 6/30/2022 | 2,416.67 | 181 |
| 0009941817-IN | 5/31/2022 | 6/30/2022 | 934.66 | 181 |
| 0009941818-IN | 5/31/2022 | 6/30/2022 | 16.76 | 181 |
| 0009941819-IN | 5/31/2022 | 6/30/2022 | 87.64 | 181 |
| 0009941820-IN | 5/31/2022 | 6/30/2022 | 82.67 | 181 |
| 0009941821-IN | 5/31/2022 | 6/30/2022 | 1,918.88 | 181 |
| 0009941822-IN | 5/31/2022 | 6/30/2022 | 1,893.87 | 181 |
| 0009941823-IN | 5/31/2022 | 6/30/2022 | 138.77 | 181 |
| 0009941824-IN | 5/31/2022 | 6/30/2022 | 70.19 | 181 |
| 0009941825-IN | 5/31/2022 | 6/30/2022 | 2,593.55 | 181 |
| 0009941826-IN | 5/31/2022 | 6/30/2022 | 2,152.40 | 181 |
| 0009941827-IN | 5/31/2022 | 6/30/2022 | 70.18 | 181 |
| 0009941828-IN | 5/31/2022 | 6/30/2022 | 27.80 | 181 |

| | | | | |
|---|---|---|---|---|
| 0009941829-IN | 5/31/2022 | 6/30/2022 | 50.22 | 181 |
| 0009941830-IN | 5/31/2022 | 6/30/2022 | 809.73 | 181 |
| 0009941831-IN | 5/31/2022 | 6/30/2022 | 17.68 | 181 |
| 0009941832-IN | 5/31/2022 | 6/30/2022 | 37.57 | 181 |
| 0009941833-IN | 5/31/2022 | 6/30/2022 | 1,364.98 | 181 |
| 0009941834-IN | 5/31/2022 | 6/30/2022 | 1,037.64 | 181 |
| 0009941835-IN | 5/31/2022 | 6/30/2022 | 16.76 | 181 |
| 0009941836-IN | 5/31/2022 | 6/30/2022 | 2,220.80 | 181 |
| 0009941837-IN | 5/31/2022 | 6/30/2022 | 1,148.47 | 181 |
| 0009941838-IN | 5/31/2022 | 6/30/2022 | 1,060.28 | 181 |
| 0009941839-IN | 5/31/2022 | 6/30/2022 | 51.85 | 181 |
| 0009941840-IN | 5/31/2022 | 6/30/2022 | 768.81 | 181 |
| 0009941841-IN | 5/31/2022 | 6/30/2022 | 25.96 | 181 |
| 0009941842-IN | 5/31/2022 | 6/30/2022 | 1,275.27 | 181 |
| 0009941843-IN | 5/31/2022 | 6/30/2022 | 19.65 | 181 |
| 0009941844-IN | 5/31/2022 | 6/30/2022 | 87.10 | 181 |
| 0009941845-IN | 5/31/2022 | 6/30/2022 | 2,216.48 | 181 |
| 0009941846-IN | 5/31/2022 | 6/30/2022 | 29.62 | 181 |
| 0009941847-IN | 5/31/2022 | 6/30/2022 | 31.71 | 181 |
| 0009941848-IN | 5/31/2022 | 6/30/2022 | 32.44 | 181 |
| 0009941849-IN | 5/31/2022 | 6/30/2022 | 78.56 | 181 |
| 0009941850-IN | 5/31/2022 | 6/30/2022 | 1,539.49 | 181 |
| 0009941851-IN | 5/31/2022 | 6/30/2022 | 1,967.65 | 181 |
| 0009941852-IN | 5/31/2022 | 6/30/2022 | 3,501.78 | 181 |
| 0009941853-IN | 5/31/2022 | 6/30/2022 | 1,456.08 | 181 |
| 0009941854-IN | 5/31/2022 | 6/30/2022 | 1,814.72 | 181 |
| 0009941855-IN | 5/31/2022 | 6/30/2022 | 4,551.61 | 181 |
| 0009941856-IN | 5/31/2022 | 6/30/2022 | 53.77 | 181 |
| 0009941857-IN | 5/31/2022 | 6/30/2022 | 2,877.69 | 181 |
| 0009941858-IN | 5/31/2022 | 6/30/2022 | 145.91 | 181 |
| 0009941859-IN | 5/31/2022 | 6/30/2022 | 34.68 | 181 |
| 0009941860-IN | 5/31/2022 | 6/30/2022 | 38.46 | 181 |
| 0009941861-IN | 5/31/2022 | 6/30/2022 | 2,394.19 | 181 |
| 0009941862-IN | 5/31/2022 | 6/30/2022 | 749.66 | 181 |
| 0009944924-IN | 6/1/2022 | 7/1/2022 | 553.07 | 180 |
| 0009960507-IN | 6/6/2022 | 7/6/2022 | 1,671.06 | 175 |
| 0009960508-IN | 6/6/2022 | 7/6/2022 | 1,838.45 | 175 |
| 0009960509-IN | 6/6/2022 | 7/6/2022 | 612.49 | 175 |
| 0009960510-IN | 6/6/2022 | 7/6/2022 | 2,422.95 | 175 |
| 0009960511-IN | 6/6/2022 | 7/6/2022 | 515.13 | 175 |
| 0009960512-IN | 6/6/2022 | 7/6/2022 | 1,814.19 | 175 |
| 0009960513-IN | 6/6/2022 | 7/6/2022 | 159.65 | 175 |
| 0009960514-IN | 6/6/2022 | 7/6/2022 | 1,804.03 | 175 |
| 0009960515-IN | 6/6/2022 | 7/6/2022 | 668.20 | 175 |
| 0009960516-IN | 6/6/2022 | 7/6/2022 | 857.70 | 175 |
| 0009960517-IN | 6/6/2022 | 7/6/2022 | 523.92 | 175 |
| 0009960518-IN | 6/6/2022 | 7/6/2022 | 345.37 | 175 |
| 0009960519-IN | 6/6/2022 | 7/6/2022 | 1,737.51 | 175 |
| 0009960520-IN | 6/6/2022 | 7/6/2022 | 255.32 | 175 |
| 0009960521-IN | 6/6/2022 | 7/6/2022 | 3,166.04 | 175 |

| Invoice | Date | Due Date | Amount | Code |
|---|---|---|---|---|
| 0009960522-IN | 6/6/2022 | 7/6/2022 | 355.78 | 175 |
| 0009960523-IN | 6/6/2022 | 7/6/2022 | 1,012.70 | 175 |
| 0009960524-IN | 6/6/2022 | 7/6/2022 | 742.88 | 175 |
| 0009960525-IN | 6/6/2022 | 7/6/2022 | 355.78 | 175 |
| 0009960526-IN | 6/6/2022 | 7/6/2022 | 355.78 | 175 |
| 0009960527-IN | 6/6/2022 | 7/6/2022 | 409.91 | 175 |
| 0009960528-IN | 6/6/2022 | 7/6/2022 | 451.23 | 175 |
| 0009960529-IN | 6/6/2022 | 7/6/2022 | 447.37 | 175 |
| 0009960530-IN | 6/6/2022 | 7/6/2022 | 254.46 | 175 |
| 0009960531-IN | 6/6/2022 | 7/6/2022 | 3,923.37 | 175 |
| 0009963973-IN | 6/7/2022 | 7/7/2022 | 1.00 | 174 |
| 0009963974-IN | 6/7/2022 | 7/7/2022 | 234.98 | 174 |
| 0009963975-IN | 6/7/2022 | 7/7/2022 | 1,635.38 | 174 |
| 0009963976-IN | 6/7/2022 | 7/7/2022 | 234.98 | 174 |
| 0009963977-IN | 6/7/2022 | 7/7/2022 | 3,369.39 | 174 |
| 0009963978-IN | 6/7/2022 | 7/7/2022 | 234.98 | 174 |
| 0009963979-IN | 6/7/2022 | 7/7/2022 | 291.47 | 174 |
| 0009963980-IN | 6/7/2022 | 7/7/2022 | 2,573.05 | 174 |
| 0009963981-IN | 6/7/2022 | 7/7/2022 | 291.47 | 174 |
| 0009963982-IN | 6/7/2022 | 7/7/2022 | 325.36 | 174 |
| 0009963983-IN | 6/7/2022 | 7/7/2022 | 3,956.91 | 174 |
| 0009963984-IN | 6/7/2022 | 7/7/2022 | 325.36 | 174 |
| 0009963985-IN | 6/7/2022 | 7/7/2022 | 255.69 | 174 |
| 0009963986-IN | 6/7/2022 | 7/7/2022 | 545.18 | 174 |
| 0009963987-IN | 6/7/2022 | 7/7/2022 | 2,248.42 | 174 |
| 0009963988-IN | 6/7/2022 | 7/7/2022 | 231.94 | 174 |
| 0009963989-IN | 6/7/2022 | 7/7/2022 | 2,817.24 | 174 |
| 0009963990-IN | 6/7/2022 | 7/7/2022 | 231.94 | 174 |
| 0009963991-IN | 6/7/2022 | 7/7/2022 | 2,171.66 | 174 |
| 0009963992-IN | 6/7/2022 | 7/7/2022 | 88.85 | 174 |
| 0009963993-IN | 6/7/2022 | 7/7/2022 | 37.99 | 174 |
| 0009963994-IN | 6/7/2022 | 7/7/2022 | 77.86 | 174 |
| 0009963995-IN | 6/7/2022 | 7/7/2022 | 1,456.14 | 174 |
| 0009963996-IN | 6/7/2022 | 7/7/2022 | 36.99 | 174 |
| 0009963997-IN | 6/7/2022 | 7/7/2022 | 1,380.32 | 174 |
| 0009963998-IN | 6/7/2022 | 7/7/2022 | 2,550.90 | 174 |
| 0009963999-IN | 6/7/2022 | 7/7/2022 | 3,531.75 | 174 |
| 0009964000-IN | 6/7/2022 | 7/7/2022 | 1,286.46 | 174 |
| 0009964001-IN | 6/7/2022 | 7/7/2022 | 5,229.90 | 174 |
| 0009964002-IN | 6/7/2022 | 7/7/2022 | 68.21 | 174 |
| 0009964003-IN | 6/7/2022 | 7/7/2022 | 22.55 | 174 |
| 0009964004-IN | 6/7/2022 | 7/7/2022 | 1,981.68 | 174 |
| 0009964005-IN | 6/7/2022 | 7/7/2022 | 1,154.76 | 174 |
| 0009964006-IN | 6/7/2022 | 7/7/2022 | 204.78 | 174 |
| 0009964007-IN | 6/7/2022 | 7/7/2022 | 2,022.62 | 174 |
| 0009964008-IN | 6/7/2022 | 7/7/2022 | 114.90 | 174 |
| 0009964009-IN | 6/7/2022 | 7/7/2022 | 32.35 | 174 |
| 0009964010-IN | 6/7/2022 | 7/7/2022 | 4,591.93 | 174 |
| 0009964011-IN | 6/7/2022 | 7/7/2022 | 2,264.61 | 174 |
| 0009964012-IN | 6/7/2022 | 7/7/2022 | 16.70 | 174 |

| | | | | |
|---|---|---|---|---|
| 0009964013-IN | 6/7/2022 | 7/7/2022 | 3,198.34 | 174 |
| 0009964014-IN | 6/7/2022 | 7/7/2022 | 42.70 | 174 |
| 0009964015-IN | 6/7/2022 | 7/7/2022 | 84.18 | 174 |
| 0009964016-IN | 6/7/2022 | 7/7/2022 | 26.69 | 174 |
| 0009964017-IN | 6/7/2022 | 7/7/2022 | 1,815.93 | 174 |
| 0009964018-IN | 6/7/2022 | 7/7/2022 | 2,078.62 | 174 |
| 0009964019-IN | 6/7/2022 | 7/7/2022 | 83.40 | 174 |
| 0009964020-IN | 6/7/2022 | 7/7/2022 | 1,399.38 | 174 |
| 0009964021-IN | 6/7/2022 | 7/7/2022 | 779.45 | 174 |
| 0009964022-IN | 6/7/2022 | 7/7/2022 | 1,838.52 | 174 |
| 0009964023-IN | 6/7/2022 | 7/7/2022 | 630.84 | 174 |
| 0009964024-IN | 6/7/2022 | 7/7/2022 | 35.73 | 174 |
| 0009964025-IN | 6/7/2022 | 7/7/2022 | 1,995.07 | 174 |
| 0009964026-IN | 6/7/2022 | 7/7/2022 | 43.80 | 174 |
| 0009964027-IN | 6/7/2022 | 7/7/2022 | 35.64 | 174 |
| 0009964028-IN | 6/7/2022 | 7/7/2022 | 20.04 | 174 |
| 0009964029-IN | 6/7/2022 | 7/7/2022 | 829.92 | 174 |
| 0009964030-IN | 6/7/2022 | 7/7/2022 | 1,027.48 | 174 |
| 0009964031-IN | 6/7/2022 | 7/7/2022 | 29.75 | 174 |
| 0009964032-IN | 6/7/2022 | 7/7/2022 | 44.13 | 174 |
| 0009964033-IN | 6/7/2022 | 7/7/2022 | 624.81 | 174 |
| 0009964034-IN | 6/7/2022 | 7/7/2022 | 2,237.16 | 174 |
| 0009964035-IN | 6/7/2022 | 7/7/2022 | 2,976.62 | 174 |
| 0009964036-IN | 6/7/2022 | 7/7/2022 | 43.96 | 174 |
| 0009964037-IN | 6/7/2022 | 7/7/2022 | 50.70 | 174 |
| 0009964038-IN | 6/7/2022 | 7/7/2022 | 2,719.64 | 174 |
| 0009964039-IN | 6/7/2022 | 7/7/2022 | 75.86 | 174 |
| 0009964040-IN | 6/7/2022 | 7/7/2022 | 1,275.40 | 174 |
| 0009964041-IN | 6/7/2022 | 7/7/2022 | 1,476.28 | 174 |
| 0009964042-IN | 6/7/2022 | 7/7/2022 | 1,554.51 | 174 |
| 0009964043-IN | 6/7/2022 | 7/7/2022 | 63.58 | 174 |
| 0009964044-IN | 6/7/2022 | 7/7/2022 | 1,186.25 | 174 |
| 0009964045-IN | 6/7/2022 | 7/7/2022 | 38.87 | 174 |
| 0009964046-IN | 6/7/2022 | 7/7/2022 | 1,226.23 | 174 |
| 0009964047-IN | 6/7/2022 | 7/7/2022 | 1,142.82 | 174 |
| 0009964048-IN | 6/7/2022 | 7/7/2022 | 37.81 | 174 |
| 0009964049-IN | 6/7/2022 | 7/7/2022 | 3,064.53 | 174 |
| 0009964050-IN | 6/7/2022 | 7/7/2022 | 44.48 | 174 |
| 0009964051-IN | 6/7/2022 | 7/7/2022 | 29.15 | 174 |
| 0009964052-IN | 6/7/2022 | 7/7/2022 | 22.43 | 174 |
| 0009964053-IN | 6/7/2022 | 7/7/2022 | 1,165.26 | 174 |
| 0009964054-IN | 6/7/2022 | 7/7/2022 | 2,841.05 | 174 |
| 0009964055-IN | 6/7/2022 | 7/7/2022 | 2,297.96 | 174 |
| 0009964056-IN | 6/7/2022 | 7/7/2022 | 63.17 | 174 |
| 0009964057-IN | 6/7/2022 | 7/7/2022 | 70.72 | 174 |
| 0009964058-IN | 6/7/2022 | 7/7/2022 | 5,213.72 | 174 |
| 0009964059-IN | 6/7/2022 | 7/7/2022 | 54.47 | 174 |
| 0009964060-IN | 6/7/2022 | 7/7/2022 | 21.83 | 174 |
| 0009964061-IN | 6/7/2022 | 7/7/2022 | 70.76 | 174 |
| 0009964062-IN | 6/7/2022 | 7/7/2022 | 543.95 | 174 |

| | | | | |
|---|---|---|---|---|
| 0009964063-IN | 6/7/2022 | 7/7/2022 | 1,380.03 | 174 |
| 0009964064-IN | 6/7/2022 | 7/7/2022 | 2,202.66 | 174 |
| 0009964065-IN | 6/7/2022 | 7/7/2022 | 54.63 | 174 |
| 0009964066-IN | 6/7/2022 | 7/7/2022 | 1,330.94 | 174 |
| 0009964067-IN | 6/7/2022 | 7/7/2022 | 19.07 | 174 |
| 0009964068-IN | 6/7/2022 | 7/7/2022 | 1,845.69 | 174 |
| 0009964069-IN | 6/7/2022 | 7/7/2022 | 34.50 | 174 |
| 0009964070-IN | 6/7/2022 | 7/7/2022 | 1,120.90 | 174 |
| 0009964071-IN | 6/7/2022 | 7/7/2022 | 55.92 | 174 |
| 0009964072-IN | 6/7/2022 | 7/7/2022 | 23.23 | 174 |
| 0009964073-IN | 6/7/2022 | 7/7/2022 | 1,488.54 | 174 |
| 0009964074-IN | 6/7/2022 | 7/7/2022 | 2,248.19 | 174 |
| 0009964075-IN | 6/7/2022 | 7/7/2022 | 2,430.89 | 174 |
| 0009964076-IN | 6/7/2022 | 7/7/2022 | 3,285.31 | 174 |
| 0009964077-IN | 6/7/2022 | 7/7/2022 | 128.32 | 174 |
| 0009964078-IN | 6/7/2022 | 7/7/2022 | 1,834.24 | 174 |
| 0009964079-IN | 6/7/2022 | 7/7/2022 | 56.02 | 174 |
| 0009964080-IN | 6/7/2022 | 7/7/2022 | 1,777.18 | 174 |
| 0009964081-IN | 6/7/2022 | 7/7/2022 | 2,865.36 | 174 |
| 0009964082-IN | 6/7/2022 | 7/7/2022 | 129.18 | 174 |
| 0009964083-IN | 6/7/2022 | 7/7/2022 | 16.70 | 174 |
| 0009964084-IN | 6/7/2022 | 7/7/2022 | 1,303.26 | 174 |
| 0009964085-IN | 6/7/2022 | 7/7/2022 | 147.51 | 174 |
| 0009964086-IN | 6/7/2022 | 7/7/2022 | 25.65 | 174 |
| 0009987702-IN | 6/16/2022 | 7/16/2022 | 1.00 | 165 |
| 0009994631-IN | 6/19/2022 | 7/19/2022 | 1,703.84 | 162 |
| 0009994632-IN | 6/19/2022 | 7/19/2022 | 593.52 | 162 |
| 0009994633-IN | 6/19/2022 | 7/19/2022 | 34.50 | 162 |
| 0009994634-IN | 6/19/2022 | 7/19/2022 | 2,673.43 | 162 |
| 0009994635-IN | 6/19/2022 | 7/19/2022 | 1,941.52 | 162 |
| 0009994636-IN | 6/19/2022 | 7/19/2022 | 30.83 | 162 |
| 0009994637-IN | 6/19/2022 | 7/19/2022 | 703.41 | 162 |
| 0009994638-IN | 6/19/2022 | 7/19/2022 | 55.91 | 162 |
| 0009994639-IN | 6/19/2022 | 7/19/2022 | 747.22 | 162 |
| 0009994640-IN | 6/19/2022 | 7/19/2022 | 68.68 | 162 |
| 0009994641-IN | 6/19/2022 | 7/19/2022 | 20.70 | 162 |
| 0009994642-IN | 6/19/2022 | 7/19/2022 | 25.99 | 162 |
| 0009994643-IN | 6/19/2022 | 7/19/2022 | 28.22 | 162 |
| 0009994644-IN | 6/19/2022 | 7/19/2022 | 1,111.80 | 162 |
| 0009994645-IN | 6/19/2022 | 7/19/2022 | 46.63 | 162 |
| 0009994646-IN | 6/19/2022 | 7/19/2022 | 2,025.90 | 162 |
| 0009994647-IN | 6/19/2022 | 7/19/2022 | 2,629.31 | 162 |
| 0009994648-IN | 6/19/2022 | 7/19/2022 | 1,538.89 | 162 |
| 0009994649-IN | 6/19/2022 | 7/19/2022 | 1,649.32 | 162 |
| 0009994650-IN | 6/19/2022 | 7/19/2022 | 56.58 | 162 |
| 0009994651-IN | 6/19/2022 | 7/19/2022 | 21.44 | 162 |
| 0009994652-IN | 6/19/2022 | 7/19/2022 | 1,449.21 | 162 |
| 0009994653-IN | 6/19/2022 | 7/19/2022 | 1,996.34 | 162 |
| 0009994654-IN | 6/19/2022 | 7/19/2022 | 1,138.25 | 162 |
| 0009994655-IN | 6/19/2022 | 7/19/2022 | 32.97 | 162 |

| | | | | |
|---|---|---|---|---|
| 0009994656-IN | 6/19/2022 | 7/19/2022 | 86.14 | 162 |
| 0009994657-IN | 6/19/2022 | 7/19/2022 | 28.44 | 162 |
| 0009994658-IN | 6/19/2022 | 7/19/2022 | 47.68 | 162 |
| 0009994659-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994660-IN | 6/19/2022 | 7/19/2022 | 36.09 | 162 |
| 0009994661-IN | 6/19/2022 | 7/19/2022 | 394.70 | 162 |
| 0009994662-IN | 6/19/2022 | 7/19/2022 | 70.95 | 162 |
| 0009994663-IN | 6/19/2022 | 7/19/2022 | 60.17 | 162 |
| 0009994664-IN | 6/19/2022 | 7/19/2022 | 65.28 | 162 |
| 0009994665-IN | 6/19/2022 | 7/19/2022 | 1,386.04 | 162 |
| 0009994666-IN | 6/19/2022 | 7/19/2022 | 1,590.97 | 162 |
| 0009994667-IN | 6/19/2022 | 7/19/2022 | 1,053.58 | 162 |
| 0009994668-IN | 6/19/2022 | 7/19/2022 | 949.97 | 162 |
| 0009994669-IN | 6/19/2022 | 7/19/2022 | 25.26 | 162 |
| 0009994670-IN | 6/19/2022 | 7/19/2022 | 2,043.23 | 162 |
| 0009994671-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994672-IN | 6/19/2022 | 7/19/2022 | 1,105.29 | 162 |
| 0009994673-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994674-IN | 6/19/2022 | 7/19/2022 | 1,528.96 | 162 |
| 0009994675-IN | 6/19/2022 | 7/19/2022 | 570.92 | 162 |
| 0009994676-IN | 6/19/2022 | 7/19/2022 | 969.91 | 162 |
| 0009994677-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994678-IN | 6/19/2022 | 7/19/2022 | 58.33 | 162 |
| 0009994679-IN | 6/19/2022 | 7/19/2022 | 2,156.52 | 162 |
| 0009994680-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994681-IN | 6/19/2022 | 7/19/2022 | 2,647.41 | 162 |
| 0009994682-IN | 6/19/2022 | 7/19/2022 | 91.21 | 162 |
| 0009994683-IN | 6/19/2022 | 7/19/2022 | 1,228.96 | 162 |
| 0009994684-IN | 6/19/2022 | 7/19/2022 | 1,770.43 | 162 |
| 0009994685-IN | 6/19/2022 | 7/19/2022 | 72.29 | 162 |
| 0009994686-IN | 6/19/2022 | 7/19/2022 | 37.35 | 162 |
| 0009994687-IN | 6/19/2022 | 7/19/2022 | 3,066.51 | 162 |
| 0009994688-IN | 6/19/2022 | 7/19/2022 | 895.69 | 162 |
| 0009994689-IN | 6/19/2022 | 7/19/2022 | 1,107.87 | 162 |
| 0009994690-IN | 6/19/2022 | 7/19/2022 | 1,568.96 | 162 |
| 0009994691-IN | 6/19/2022 | 7/19/2022 | 19.50 | 162 |
| 0009994692-IN | 6/19/2022 | 7/19/2022 | 20.33 | 162 |
| 0009994693-IN | 6/19/2022 | 7/19/2022 | 913.19 | 162 |
| 0009994694-IN | 6/19/2022 | 7/19/2022 | 54.13 | 162 |
| 0009994695-IN | 6/19/2022 | 7/19/2022 | 2,667.89 | 162 |
| 0009994696-IN | 6/19/2022 | 7/19/2022 | 1,802.89 | 162 |
| 0009994697-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994698-IN | 6/19/2022 | 7/19/2022 | 34.08 | 162 |
| 0009994699-IN | 6/19/2022 | 7/19/2022 | 359.37 | 162 |
| 0009994700-IN | 6/19/2022 | 7/19/2022 | 50.89 | 162 |
| 0009994701-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994702-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994703-IN | 6/19/2022 | 7/19/2022 | 3,863.44 | 162 |
| 0009994704-IN | 6/19/2022 | 7/19/2022 | 46.76 | 162 |
| 0009994705-IN | 6/19/2022 | 7/19/2022 | 60.05 | 162 |

| | | | | |
|---|---|---|---|---|
| 0009994706-IN | 6/19/2022 | 7/19/2022 | 1,792.47 | 162 |
| 0009994707-IN | 6/19/2022 | 7/19/2022 | 160.65 | 162 |
| 0009994708-IN | 6/19/2022 | 7/19/2022 | 5,007.58 | 162 |
| 0009994709-IN | 6/19/2022 | 7/19/2022 | 1,329.95 | 162 |
| 0009994710-IN | 6/19/2022 | 7/19/2022 | 1,756.61 | 162 |
| 0009994711-IN | 6/19/2022 | 7/19/2022 | 1,698.53 | 162 |
| 0009994712-IN | 6/19/2022 | 7/19/2022 | 2,333.07 | 162 |
| 0009994713-IN | 6/19/2022 | 7/19/2022 | 839.98 | 162 |
| 0009994714-IN | 6/19/2022 | 7/19/2022 | 45.74 | 162 |
| 0009994715-IN | 6/19/2022 | 7/19/2022 | 1,367.22 | 162 |
| 0009994716-IN | 6/19/2022 | 7/19/2022 | 1,012.46 | 162 |
| 0009994717-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994718-IN | 6/19/2022 | 7/19/2022 | 32.49 | 162 |
| 0009994719-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994720-IN | 6/19/2022 | 7/19/2022 | 1,708.37 | 162 |
| 0009994721-IN | 6/19/2022 | 7/19/2022 | 31.91 | 162 |
| 0009994722-IN | 6/19/2022 | 7/19/2022 | 1,799.32 | 162 |
| 0009994723-IN | 6/19/2022 | 7/19/2022 | 39.49 | 162 |
| 0009994724-IN | 6/19/2022 | 7/19/2022 | 2,122.72 | 162 |
| 0009994725-IN | 6/19/2022 | 7/19/2022 | 822.02 | 162 |
| 0009994726-IN | 6/19/2022 | 7/19/2022 | 16.93 | 162 |
| 0009994727-IN | 6/19/2022 | 7/19/2022 | 2,588.56 | 162 |
| 0009994728-IN | 6/19/2022 | 7/19/2022 | 1,704.90 | 162 |
| 0009994729-IN | 6/19/2022 | 7/19/2022 | 31.14 | 162 |
| 0009994730-IN | 6/19/2022 | 7/19/2022 | 377.00 | 162 |
| 0009994731-IN | 6/19/2022 | 7/19/2022 | 581.32 | 162 |
| 0009994732-IN | 6/19/2022 | 7/19/2022 | 228.17 | 162 |
| 0009994733-IN | 6/19/2022 | 7/19/2022 | 2,289.29 | 162 |
| 0009994734-IN | 6/19/2022 | 7/19/2022 | 787.15 | 162 |
| 0009994735-IN | 6/19/2022 | 7/19/2022 | 17.15 | 162 |
| 0009994736-IN | 6/19/2022 | 7/19/2022 | 26.72 | 162 |
| 0009994737-IN | 6/19/2022 | 7/19/2022 | 59.47 | 162 |
| 0009994738-IN | 6/19/2022 | 7/19/2022 | 56.98 | 162 |
| 0009994739-IN | 6/19/2022 | 7/19/2022 | 38.85 | 162 |
| 0009994740-IN | 6/19/2022 | 7/19/2022 | 43.35 | 162 |
| 0009994741-IN | 6/19/2022 | 7/19/2022 | 2,193.88 | 162 |
| 0009999385-IN | 6/21/2022 | 7/21/2022 | 16.93 | 160 |
| 0009999386-IN | 6/21/2022 | 7/21/2022 | 223.92 | 160 |
| 0009999387-IN | 6/21/2022 | 7/21/2022 | 1,101.99 | 160 |
| 0009999388-IN | 6/21/2022 | 7/21/2022 | 2,044.07 | 160 |
| 0009999389-IN | 6/21/2022 | 7/21/2022 | 1,951.57 | 160 |
| 0009999390-IN | 6/21/2022 | 7/21/2022 | 1,523.34 | 160 |
| 0009999391-IN | 6/21/2022 | 7/21/2022 | 49.39 | 160 |
| 0009999392-IN | 6/21/2022 | 7/21/2022 | 748.78 | 160 |
| 0009999393-IN | 6/21/2022 | 7/21/2022 | 23.66 | 160 |
| 0009999394-IN | 6/21/2022 | 7/21/2022 | 21.77 | 160 |
| 0009999395-IN | 6/21/2022 | 7/21/2022 | 100.80 | 160 |
| 0009999396-IN | 6/21/2022 | 7/21/2022 | 40.93 | 160 |
| 0009999397-IN | 6/21/2022 | 7/21/2022 | 1,279.25 | 160 |
| 0009999398-IN | 6/21/2022 | 7/21/2022 | 739.71 | 160 |

| | | | | |
|---|---|---|---|---|
| 0009999399-IN | 6/21/2022 | 7/21/2022 | 17.15 | 160 |
| 0009999400-IN | 6/21/2022 | 7/21/2022 | 1,021.77 | 160 |
| 0009999401-IN | 6/21/2022 | 7/21/2022 | 20.26 | 160 |
| 0009999402-IN | 6/21/2022 | 7/21/2022 | 3,547.20 | 160 |
| 0009999403-IN | 6/21/2022 | 7/21/2022 | 1,918.83 | 160 |
| 0009999404-IN | 6/21/2022 | 7/21/2022 | 1,029.88 | 160 |
| 0009999405-IN | 6/21/2022 | 7/21/2022 | 42.60 | 160 |
| 0009999406-IN | 6/21/2022 | 7/21/2022 | 45.20 | 160 |
| 0009999407-IN | 6/21/2022 | 7/21/2022 | 164.23 | 160 |
| 0009999408-IN | 6/21/2022 | 7/21/2022 | 2,378.76 | 160 |
| 0009999409-IN | 6/21/2022 | 7/21/2022 | 95.50 | 160 |
| 0009999410-IN | 6/21/2022 | 7/21/2022 | 93.42 | 160 |
| 0009999411-IN | 6/21/2022 | 7/21/2022 | 63.19 | 160 |
| 0009999412-IN | 6/21/2022 | 7/21/2022 | 2,583.65 | 160 |
| 0009999413-IN | 6/21/2022 | 7/21/2022 | 2,606.81 | 160 |
| 0009999414-IN | 6/21/2022 | 7/21/2022 | 72.87 | 160 |
| 0009999415-IN | 6/21/2022 | 7/21/2022 | 40.50 | 160 |
| 0009999416-IN | 6/21/2022 | 7/21/2022 | 25.74 | 160 |
| 0009999417-IN | 6/21/2022 | 7/21/2022 | 1,456.55 | 160 |
| 0009999418-IN | 6/21/2022 | 7/21/2022 | 73.26 | 160 |
| 0009999419-IN | 6/21/2022 | 7/21/2022 | 433.58 | 160 |
| 0009999420-IN | 6/21/2022 | 7/21/2022 | 2,955.05 | 160 |
| 0009999421-IN | 6/21/2022 | 7/21/2022 | 8,231.52 | 160 |
| 0009999422-IN | 6/21/2022 | 7/21/2022 | 33.74 | 160 |
| 0009999423-IN | 6/21/2022 | 7/21/2022 | 151.44 | 160 |
| 0009999424-IN | 6/21/2022 | 7/21/2022 | 18.28 | 160 |
| 0009999425-IN | 6/21/2022 | 7/21/2022 | 118.07 | 160 |
| 0009999426-IN | 6/21/2022 | 7/21/2022 | 566.30 | 160 |
| 0009999427-IN | 6/21/2022 | 7/21/2022 | 1,200.49 | 160 |
| 0009999428-IN | 6/21/2022 | 7/21/2022 | 1,196.18 | 160 |
| 0009999429-IN | 6/21/2022 | 7/21/2022 | 16.93 | 160 |
| 0009999430-IN | 6/21/2022 | 7/21/2022 | 1,649.86 | 160 |
| 0009999431-IN | 6/21/2022 | 7/21/2022 | 3,345.60 | 160 |
| 0009999432-IN | 6/21/2022 | 7/21/2022 | 31.68 | 160 |
| 0009999433-IN | 6/21/2022 | 7/21/2022 | 1,441.92 | 160 |
| 0009999434-IN | 6/21/2022 | 7/21/2022 | 46.87 | 160 |
| 0009999435-IN | 6/21/2022 | 7/21/2022 | 2,761.34 | 160 |
| 0010013826-IN | 6/27/2022 | 7/27/2022 | 1,162.55 | 154 |
| 0010013827-IN | 6/27/2022 | 7/27/2022 | 101.31 | 154 |
| 0010013828-IN | 6/27/2022 | 7/27/2022 | 1,817.86 | 154 |
| 0010013829-IN | 6/27/2022 | 7/27/2022 | 2,038.10 | 154 |
| 0010013830-IN | 6/27/2022 | 7/27/2022 | 1,391.80 | 154 |
| 0010013831-IN | 6/27/2022 | 7/27/2022 | 754.44 | 154 |
| 0010013832-IN | 6/27/2022 | 7/27/2022 | 1,238.45 | 154 |
| 0010013833-IN | 6/27/2022 | 7/27/2022 | 399.54 | 154 |
| 0010013834-IN | 6/27/2022 | 7/27/2022 | 1,287.18 | 154 |
| 0010013835-IN | 6/27/2022 | 7/27/2022 | 861.97 | 154 |
| 0010013836-IN | 6/27/2022 | 7/27/2022 | 28.51 | 154 |
| 0010013837-IN | 6/27/2022 | 7/27/2022 | 21.28 | 154 |
| 0010013838-IN | 6/27/2022 | 7/27/2022 | 32.98 | 154 |

| | | | | |
|---|---|---|---|---|
| 0010013839-IN | 6/27/2022 | 7/27/2022 | 23.54 | 154 |
| 0010013840-IN | 6/27/2022 | 7/27/2022 | 89.16 | 154 |
| 0010013841-IN | 6/27/2022 | 7/27/2022 | 22.94 | 154 |
| 0010013842-IN | 6/27/2022 | 7/27/2022 | 25.42 | 154 |
| 0010013843-IN | 6/27/2022 | 7/27/2022 | 16.93 | 154 |
| 0010013844-IN | 6/27/2022 | 7/27/2022 | 1,933.84 | 154 |
| 0010013845-IN | 6/27/2022 | 7/27/2022 | 23.33 | 154 |
| 0010013846-IN | 6/27/2022 | 7/27/2022 | 2,502.30 | 154 |
| 0010013847-IN | 6/27/2022 | 7/27/2022 | 884.02 | 154 |
| 0010013848-IN | 6/27/2022 | 7/27/2022 | 2,200.38 | 154 |
| 0010013849-IN | 6/27/2022 | 7/27/2022 | 17.45 | 154 |
| 0010013850-IN | 6/27/2022 | 7/27/2022 | 105.85 | 154 |
| 0010013851-IN | 6/27/2022 | 7/27/2022 | 1,515.38 | 154 |
| 0010013852-IN | 6/27/2022 | 7/27/2022 | 78.93 | 154 |
| 0010013853-IN | 6/27/2022 | 7/27/2022 | 1,036.07 | 154 |
| 0010013854-IN | 6/27/2022 | 7/27/2022 | 49.82 | 154 |
| 0010013855-IN | 6/27/2022 | 7/27/2022 | 1,129.74 | 154 |
| 0010013856-IN | 6/27/2022 | 7/27/2022 | 601.89 | 154 |
| 0010013857-IN | 6/27/2022 | 7/27/2022 | 33.10 | 154 |
| 0010013858-IN | 6/27/2022 | 7/27/2022 | 21.47 | 154 |
| 0010013859-IN | 6/27/2022 | 7/27/2022 | 1,941.33 | 154 |
| 0010013860-IN | 6/27/2022 | 7/27/2022 | 37.02 | 154 |
| 0010013861-IN | 6/27/2022 | 7/27/2022 | 38.43 | 154 |
| 0010013862-IN | 6/27/2022 | 7/27/2022 | 2,355.57 | 154 |
| 0010013863-IN | 6/27/2022 | 7/27/2022 | 223.92 | 154 |
| 0010013864-IN | 6/27/2022 | 7/27/2022 | 1,675.07 | 154 |
| 0010013865-IN | 6/27/2022 | 7/27/2022 | 16.93 | 154 |
| 0010013866-IN | 6/27/2022 | 7/27/2022 | 46.04 | 154 |
| 0010013867-IN | 6/27/2022 | 7/27/2022 | 25.32 | 154 |
| 0010013868-IN | 6/27/2022 | 7/27/2022 | 21.34 | 154 |
| 0010013869-IN | 6/27/2022 | 7/27/2022 | 1,366.94 | 154 |
| 0010013870-IN | 6/27/2022 | 7/27/2022 | 42.49 | 154 |
| 0010013871-IN | 6/27/2022 | 7/27/2022 | 1,800.41 | 154 |
| 0010013872-IN | 6/27/2022 | 7/27/2022 | 872.84 | 154 |
| 0010013873-IN | 6/27/2022 | 7/27/2022 | 29.28 | 154 |
| 0010020539-IN | 6/30/2022 | 7/30/2022 | 3,843.61 | 151 |
| 0010020540-IN | 6/30/2022 | 7/30/2022 | 333.09 | 151 |
| 0010020541-IN | 6/30/2022 | 7/30/2022 | 234.30 | 151 |
| 0010020542-IN | 6/30/2022 | 7/30/2022 | 234.30 | 151 |
| 0010020543-IN | 6/30/2022 | 7/30/2022 | 2,191.21 | 151 |
| 0010020544-IN | 6/30/2022 | 7/30/2022 | 2,086.97 | 151 |
| 0010020545-IN | 6/30/2022 | 7/30/2022 | 293.45 | 151 |
| 0010020546-IN | 6/30/2022 | 7/30/2022 | 234.30 | 151 |
| 0010020547-IN | 6/30/2022 | 7/30/2022 | 2,783.23 | 151 |
| 0010020548-IN | 6/30/2022 | 7/30/2022 | 524.74 | 151 |
| 0010020549-IN | 6/30/2022 | 7/30/2022 | 5,697.95 | 151 |
| 0010023552-IN | 6/30/2022 | 7/30/2022 | 234.30 | 151 |
| 0010023553-IN | 6/30/2022 | 7/30/2022 | 301.40 | 151 |
| 0010023554-IN | 6/30/2022 | 7/30/2022 | 2,017.05 | 151 |
| 0010023555-IN | 6/30/2022 | 7/30/2022 | 349.63 | 151 |

| | | | | |
|---|---|---|---|---|
| 0010023556-IN | 6/30/2022 | 7/30/2022 | 2,367.52 | 151 |
| 0010023557-IN | 6/30/2022 | 7/30/2022 | 236.58 | 151 |
| 0010023558-IN | 6/30/2022 | 7/30/2022 | 281.88 | 151 |
| 0010023559-IN | 6/30/2022 | 7/30/2022 | 441.15 | 151 |
| 0010023560-IN | 6/30/2022 | 7/30/2022 | 234.30 | 151 |
| 0010023561-IN | 6/30/2022 | 7/30/2022 | 1,568.59 | 151 |
| 0010023562-IN | 6/30/2022 | 7/30/2022 | 273.61 | 151 |
| 0010023563-IN | 6/30/2022 | 7/30/2022 | 1,775.96 | 151 |
| 0010023564-IN | 6/30/2022 | 7/30/2022 | 2,938.86 | 151 |
| 0010023565-IN | 6/30/2022 | 7/30/2022 | 234.30 | 151 |
| 0010040562-IN | 7/7/2022 | 8/6/2022 | 2,134.43 | 144 |
| 0010040563-IN | 7/7/2022 | 8/6/2022 | 321.87 | 144 |
| 0010040564-IN | 7/7/2022 | 8/6/2022 | 257.72 | 144 |
| 0010040565-IN | 7/7/2022 | 8/6/2022 | 236.58 | 144 |
| 0010060048-IN | 7/14/2022 | 8/13/2022 | 315.42 | 137 |
| 0010066112-IN | 7/17/2022 | 8/16/2022 | 235.09 | 134 |
| 0010066113-IN | 7/17/2022 | 8/16/2022 | 237.37 | 134 |
| 0010066114-IN | 7/17/2022 | 8/16/2022 | 1,878.95 | 134 |
| 0010066115-IN | 7/17/2022 | 8/16/2022 | 2,327.06 | 134 |
| 0010088434-IN | 7/27/2022 | 8/26/2022 | 2,043.20 | 124 |
| 0010088435-IN | 7/27/2022 | 8/26/2022 | 201.96 | 124 |
| 0010088436-IN | 7/27/2022 | 8/26/2022 | 806.87 | 124 |
| 0010088437-IN | 7/27/2022 | 8/26/2022 | 420.29 | 124 |
| 0010088438-IN | 7/27/2022 | 8/26/2022 | 280.64 | 124 |
| 0010088439-IN | 7/27/2022 | 8/26/2022 | 2,196.61 | 124 |
| 0010088440-IN | 7/27/2022 | 8/26/2022 | 824.82 | 124 |
| 0010088441-IN | 7/27/2022 | 8/26/2022 | 244.85 | 124 |
| 0010088442-IN | 7/27/2022 | 8/26/2022 | 415.17 | 124 |
| 0010088443-IN | 7/27/2022 | 8/26/2022 | 278.41 | 124 |
| 0010088444-IN | 7/27/2022 | 8/26/2022 | 1,231.50 | 124 |
| 0010088445-IN | 7/27/2022 | 8/26/2022 | 253.26 | 124 |
| 0010088446-IN | 7/27/2022 | 8/26/2022 | 1,610.11 | 124 |
| 0010088447-IN | 7/27/2022 | 8/26/2022 | 657.78 | 124 |
| 0010088448-IN | 7/27/2022 | 8/26/2022 | 273.21 | 124 |
| 0010088449-IN | 7/27/2022 | 8/26/2022 | 1,436.45 | 124 |
| 0010088450-IN | 7/27/2022 | 8/26/2022 | 549.47 | 124 |
| 0010114838-IN | 8/4/2022 | 9/3/2022 | 2,089.31 | 116 |
| 0010114839-IN | 8/4/2022 | 9/3/2022 | 2,055.05 | 116 |
| 0010122397-IN | 8/7/2022 | 9/6/2022 | 479.66 | 113 |
| 0010122398-IN | 8/7/2022 | 9/6/2022 | 338.61 | 113 |
| 0010106272-IN | 8/3/2022 | 9/2/2022 | 33.75 | 117 |
| 0010338070-IN | 10/28/2022 | 11/27/2022 | 2,300.00 | 31 |

2023LA000001

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 20864247
2023LA000001
FILEDATE: 1/3/2023 8:37 AM
Date Submitted: 1/3/2023 8:37 AM
Date Accepted: 1/3/2023 10:20 AM
LG

# Exhibit C

DuPage #21248 clk



**SENT VIA EMAIL AND PRIORITY MAIL**

November 2, 2022

The Korex Corporation
Attn: John Bojkovski
Cc: Frank Gray
50000 W. Pontiac Trail
Wixom, MI 48393
e: JBojkovski@korex-ca.com

Subject: **HUB GROUP - DEMAND FOR PAYMENT**

Mr. Bojkovski,

As you are aware, The Korex Company ("Korex") is delinquent in its payment of invoices for services provided by Hub Group, Inc. ("Hub Group"). To date, the total amount owed to Hub Group by Korex is $773,078.64.

This is a serious delinquency. Korex has offered no plan to Hub Group for payment and has not responded to Hub Group's communication attempts to date.

This letter serves as demand for immediate payment of the outstanding $773,078.64 due to Hub Group. We look forward to receipt of payment and desire to resolve this matter with Korex in an amicable manner. However, if payment in full is not received by Hub Group within ten (10) days of the date of this letter, Hub Group will have no option but to pursue other legal remedies available to collect these amounts from Korex, plus any applicable interest, costs, and attorneys' fees.

If you have any questions, please contact me.

Sincerely,

Brittany Hartwig
Assistant General Counsel
**bhartwig@hubgroup.com**